CENTRAL MAINE POWER COMPANY

*vs.*

FLORA ROLLINS, ET ALS.

Piscataquis.     Opinion July 9, 1927.

*Adverse possession which will ripen into title must be under a claim of right.    The possession of the disseizor must be hostile or adverse in its character, importing a denial of the owner's title in the property claimed.*

*Retention of a deed by the grantee is prima facie evidence of its delivery and accept-ance, but this presumption is rebuttable, and may be overcome by evidence of dissent.*

In the case at bar the evidence justifies a finding by the jury that the defendants and their privies in occupation gained title by adverse possession to that part of lot I, range 9, lying north of the Sebec River, and it is a farm.

The jury were further warranted in finding that the defendants, during more than twenty years without interruption, used the land in lot I south of the river as farmers ordinarily use their wood lots, and it belonged to the farm.

The defendants are not barred by estoppel from setting up title by adverse possession.    Admission of privies in occupation in recognition of the owner's title made in a deposition taken in litigation foreign to the instant cause and in which neither the plaintiff nor its privies are parties do not effect an estoppel.

The facts in evidence do not warrant a reversal of the verdict on the ground of equitable estoppel arising from a failure of the defendants to appraise the plaintiff's predecessor in record title of the adverse possession claimed.

On general motion and exceptions by plaintiff.   A real action to determine the title to certain real estate in the town of Sebec.   Demandant relied for its title upon recorded deeds.   Defendants in possession claimed title by adverse possession.   A verdict for defendants was rendered and plaintiff filed a general motion for a new trial, and excepted to the admission of certain testimony and to a refusal

to give requested instruction. Motion overruled. Exceptions overruled.

The case fully appears in the opinion.

C. W. & H M. *Hayes, Hudson & Hudson, and William B. Skelton,* for plaintiff.

*Elias Smith and E. P. Spinney,* for defendants.

SITTING: PHILBROOK, DEASY, STURGIS, BASSETT, JJ., MORRILL, A.R.J.

STURGIS, J. Real action to recover possession of that part of Lot 1, Range 9, in the town of Sebec which lies south of the Sebec river, together with certain shore rights on the north side of the stream. The verdict was for the defendants, and the case is before this Court on general motion and exceptions to the admission of evidence and the refusal of the presiding Justice to give requested instructions.

The demandant introduced deeds establishing a chain of record title through mesne conveyances originating in a deed from the heirs of Edson L. Oak, dated May 30, 1904, and concluding with a deed, dated January 1, 1921, from the Penobscot Bay Electric Co. to the plaintiff corporation. In reliance on the rule stated in *Stetson* v. *Grant,* 102 Maine, 222, that the legal presumption is that by a deed of conveyance of land, duly executed and recorded, title passes, the grantor has sufficient seizin to enable him to convey, and the seizin and title are coextensive, the plaintiff rested.

The defendants rely on adverse possession. They present witnesses who testify that in 1838 George Rollins, a veteran of the war of 1812, settled on Lot 1, Range 9. The lot lies on the north and south sides of the Sebec river, and within its limits the stream falls sharply in its course creating falls or rips, which with the passage of time and advent of new demands for hydro-electric power have become of substantial value. On the north side of the river George Rollins cleared the forest, turned the woodland into fields and pastures, built a log cabin and later a frame dwelling, and with his family established and carried on a small farm. His son, Joel Rollins, lived at home, and with the father carried on the place until the latter's death in 1876.

Joel Rollins married and with his family continued to occupy on the north side of the stream as had his father before him. The clearing of the woodland was continued and the fields extended. The buildings were enlarged and new ones erected. The livestock was increased, and farming was carried on on a more extensive scale. Fences and stone walls were kept up, and the land to the north shore of the Sebec river was kept enclosed. There is abundant evidence that the occupation of the defendants and their privies on the north side of the river comported with the requirements of the statute.

R. S., Chap. 110, Sec. 10, provides: "To constitute a disseizin, or such exclusive and adverse possession of lands as to bar or limit the right of the true owner thereof to recover them, such lands need not be surrounded with fences or rendered inaccessible by water; but it is sufficient, if the possession, occupation and improvement are open, notorious and comporting with the ordinary management of a farm; although that part of the same which composes the woodland belonging to such farm and used therewith as a woodlot, is not so enclosed." The last clause of this statute has been construed by this Court as applying to woodland occupied and used as such in connection with land or a farm which a disseizor was also occupying and using adversely. The statute provides what shall be deemed sufficient evidence of adverse possession of lands used as a farm, and "extends the constructive disseizin or adverse character of the possession to that part of the land or farm which is 'part of the same' and used therewith as a woodlot." *Adams* v. *Clapp*, 87 Maine, 316. See also *Webber* v. *Barker*, 121 Maine, 259.

The defendants claim that their adverse possession and resulting title extended to and included all of lot 1 which lies across and south of the river. Upon the stand the defendants and their witnesses concur in the assertion that for more than fifty years all of the lot on the south side of the river has been claimed as a part of the farm on the north side and used in connection with it as a woodlot. Supported by the testimony of neighbors, they show that it was from this land that they obtained their firewood, procured logs to be sawed into lumber for repairs, cut and sold pulp and firewood, obtained material for fences, and at times cut wood for their charcoal pits. They assert a regular and continuous cutting, extending over the entire lot, begun in early times and continued up to the present.

They show with little contradiction that the boundaries of this wood-lot, except as identical with town or range lines, have been for years marked by spotted trees, spots of ancient origin renewed from time to time. That this occupation and use of the south lot extended for a period of more than twenty years without interruption is clear. That it was contemporaneous with the adverse possession and use of the farm lying immediately to the north is equally clear. As was said in *Holden* v. *Page*, 118 Maine, 242, upon closely similar facts, "the jury were authorized to find that the (defendants) during more than twenty years without interruption used it as farmers ordinarily use their wood lots."

It is elementary law, however, that adverse possession which will ripen into title must be under a claim of right. Not every unlawful entry into lands of another will work a disseizin, and dispossession is not necessarily disseizin. "To make a disseizin the possession taken by the disseizor must be hostile or adverse in its character, importing a denial of the owner's title in the property claimed, other-wise however open, notorious, constant and long continued it may be, the owner's action will not be barred." *Worcester* v. *Lord*, 56 Maine, 265, 269. This rule, we think, applies to disseizin of a wood-lot under the statute.

Invoking this rule, the demandant offers as admissions, testimony given by Joel Rollins in a deposition taken August 22, 1903, in litiga-tion foreign to the instant case, in which Mr. Rollins stated that he and his father before him had occupied Lot 1, Range 9, lying north of the Sebec river, under a claim of ownership. In the deposition, in answer to an interrogatory as to the location of the southerly bound of the land which he claimed to own, Mr. Rollins stated the south bound to be "the river". This statement, it is urged, refutes the defendants' assertion of adverse occupation of the lot south of the river. The defendant, Flora Rollins, however, explains this admis-sion. She says that the litigation out of which the taking of the deposition arose was a suit by Joel Rollins and his brother Amos against one Edward C. Mooers, who had cut growth on the north side of the river, and that at the time the deposition was taken Joel Rollins was advised by his counsel that the pending action involved only land lying north of the river, and that in his deposition Mr. Rol-lins should confine himself to that tract without mention of his claim

to the woodlot across the stream.   We cannot say that this explanation was not sufficient to overcome in the minds of the jury the effect of the deponent's statement.

Again it appears that Edson L. Oak, of Garland, in his life-time held the record title to the lands in controversy.   In February, 1904, his heirs made and executed a quitclaim deed to Joel W. and Amos Rollins in which they purported to convey to the grantees all their "right, title and interest in and to all that part of the east half of Lot one, Range nine, in the town of Sebec which lies north of the Sebec river."   Included in this conveyance was the following:   "Excepting and reserving to said grantors, their heirs and assigns, the right to build and attach a dam at such point on the north shore of said river as said grantors, their heirs or assigns, may hereafter elect, and all right of flowage, and the right to put a penstock or canal on the north side of said river, and the right to pass and repass on said shore to build and maintain said dam, penstock or canal, and the right to cross said land at some suitable place, doing as little damage to the grantees, their heirs and assigns, as may be, and the right to take all such gravel from the bank as may be necessary to use in building said dam."

The execution of this deed undoubtedly grew out of the litigation between the Rollins brothers and one Edward C. Mooers.   Its exact connection with that suit, however, is not clear.   John M. Oak, speaking for the Oak heirs, denies connection with the Mooers suit, and says that no money was received as consideration for the deed. And while it does appear elsewhere in the evidence that the Oak heirs, in 1903 or '04, were seeking to oust the Rollins family from Lot 1, there is insufficient evidence to justify a conclusion that this deed was made for the purpose of adjusting any matter in which the Oak heirs were interested.   Flora Rollins testifies that the attorney acting for the Rollins brothers advised that as a part of the settlement of the Mooers suit he would obtain a deed of the land then claimed by the Rollins brothers by adverse possession, and that sometime in 1904 the attorney delivered to her an envelope which, when she opened it in her own home, was found to contain a quitclaim deed from the Oak heirs.   She asserts most insistently that she read the deed to her husband and brother, the former being ill and the latter

of weak mentality and nearly blind, and that on discovery that it included only the land north of the river both refused to accept the deed. She says she so informed the attorney, and the record supports her further statement that the instrument was never entered for record in the registry of deeds. Her testimony as to the non-acceptance of the deed is corroborated by her sons and daughters.

The deed was not returned to the makers but remained with the Rollins family until produced at this trial. The demandant insists that this retention of the deed by the grantees named therein is conclusive evidence of its acceptance, and that the defendants as privies in title with Joseph and Amos Rollins are now estopped to deny the binding effect of the exceptions or reservations set out in the conveyance or to assert a claim of ownership beyond the boundaries and extent of the land described. The question of acceptance of the deed is one of fact for the jury to determine. Retention of a deed by the grantee for a long period is evidence of acceptance, but the presumption arising therefrom is not conclusive; it may be rebutted by satisfactory evidence to the contrary. This rule is further discussed with supporting authorities in our consideration of the second exception reserved by the demandant.

Finally, as proof of the acceptance of the Oak deed and recognition of the title of the true owner, the demandant introduced an indenture by which on August 1, 1906, Joel W. Rollins and Amos Rollins leased to the American Thread Company certain shore and flowage rights on the north shore of the Sebec river, and in the lease it was stipulated that the rights demised should not "interfere with the rights reserved in the deed given to said lessors by John M. Oak and others, dated February 26, A. D. 1904." The defendants' witnesses testified, however, that the lease was drawn by the lessees, and neither of the lessors were informed or knew that the instrument contained the reference to the Oak deed and its reservations.

The issue of acceptance of the deed of the Oak heirs and recognition of their title was one of fact. It was sharply drawn and the evidence was conflicting. The verdict indicates that the jury found that the defendants hold both the farm on the north side of the river and the woodlot across the stream under title acquired by adverse possession and not under the Oak deed. We do not think this conclusion is so clearly wrong as to require reversal by this Court. It

follows that a discussion of the effect of the deed and its recital is unnecessary.

The demandant, however, contends that even if the essential elements of adverse possession by the defendants and their privies are established, the doctrine of estoppel bars them from setting up title thus acquired. It first insists that it is a privy in title with the Oak heirs, and that they were so interested in the litigation between the Rollins brothers and Edward C. Mooers that the statement of Joel Rollins that his claim of adverse possession extended south only to "the river" estops his privies in occupation, the defendants, from now asserting claim to lands south of the river. As already noted, there is no evidence warranting a finding that the Oak heirs were parties to the litigation in which the deposition was given. Not being parties, the admission does not operate as an estoppel in favor of their successors in title. *Parsons* v. *Copeland*, 33 Maine, 370; 10 R. C. L., 702.

As a second ground of estoppel, the demandant advances the argument that if the defendants and their privies gained title to the disputed lands and water rights by adverse possession and were holding under that title in 1904, they had full knowledge of the purchase by the Sebec Power Company of these properties from the Oak heirs, and knowingly, without making known their claim of title, suffered that corporation to purchase the lands and water rights under an erroneous opinion of title. If these facts are established an equitable estoppel exists. *Martin* v *Maine Central R. R. Co.*, 83 Maine, 105. The evidence offered by the defendants controverting the demandant's proof upon this issue, if believed, justified a rejection of this claim of estoppel. The verdict cannot be reversed upon this ground.

We have thus far considered the demandant's record title and the defendant's claim of title by adverse possession. There remains upon the motion only the demandant's claim of title by its own adverse possession. It attempts to prove adverse possession of the lands in question by its predecessors and privies in title for more than twenty years, and says that it has thus acquired ownership regardless of its record title. On the brief it says that it has fulfilled the requirements of R. S., Chap. 110, Sec. 18, relating to the acquisition of wild lands in incorporated towns. It is unnecessary to quote

Vol 126—21

the statute. It is quite sufficient, we think, to quote the words of this Court in *Holden* v. *Page*, 118 Maine, 245: "Wild land has been defined as 'land in a wilderness state, not used-in connection with improved estates'. When land is contiguous to improved and cultivated land and commonly used therewith for fuel, fencing, repairs or pasturing, it no longer has the character of wild land." The land in controversy is not wild land within the purview of the statute. Nor do the facts proven by the demandant establish its adverse possession. The evident rejection of this claim by the jury was fully warranted.

Upon the finding of the jury that the defendants were the owners of the lands on the north and south banks of the Sebec river included within the limits of Lot 1, Range 9, the verdict was proper. As riparian owners the title of the defendants extended to and included the bed of the stream with all water rights appertaining. *Wilson & Son* v. *Harrisburg*, 107 Maine, 207; *Pierson* v. *Rolfe*, 71 Maine, 385.

*Exceptions:*

The first exception is to the admission of the testimony of Flora Rollins given in explanation of the statement of her husband, Joel Rollins, in his deposition taken in the suit against Edward C. Mooers. The demandant again urges that this admission operates as an estoppel and is not open to explanation. Again, as upon the motion, we must state that the record fails to establish that the demandant or its predecessors in title were parties to the litigation in which the deposition was taken, and upon the authorities already cited no estoppel exists. Unless there be an estoppel to deny an admission it is always open to explanation. This rule applies to admissions by a predecessor in title. *State* v. *Morin*, 102 Maine, 290; *Hatch* v. *Brown*, 63 Maine, 410, 419; *Parks* v. *Mosher*, 71 Maine, 304. See 22 Corpus Juris, 503, and cases cited.

The exception taken to the refusal of the presiding Justice to instruct the jury as requested is without merit. Upon an assumption that the jury should find that the deed to the Rollins brothers from the Oak heirs of February 26, 1904, was delivered to the Rollins brothers as a part of a then existing controversy, the requested in-

struction concluded with the statement, "I instruct you that the deed as a matter of law would be accepted unless within a reasonable time the guarantee therein tendered said deed back to the grantors, or one of them, or their attorney." Authorities do not support this instruction. In *Lake* v. *Weaver*, 76 New Jersey Eq., 280, cited in support of the requested instruction, it is held that the acceptance of a deed will be inferred when after delivery it remains in the possession of the grantee for a long period of years, *nothing to the contrary appearing.* Retention of a deed by the grantee is prima facie evidence of its delivery and acceptance, but this presumption is rebuttable and may be overcome by evidence of dissent. 9 R.C.L., 999; Devlin on Deeds, Vol. 1, Sec. 285 et seq. The refusal of the presiding Judge to give the instruction as requested was not error.

*Motion overruled.*
*Exceptions overruled.*