STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-01-56
GAB - YOR - 1/6/2003

ARA MANOUGIAN and
TONI MANOUGIAN,

Plaintiffs

v.

GAIL M. EJDYS,

Defendant

FINDINGS OF FACT
AND
CONCLUSIONS

DONALD L. GARBRECHT
LAW LIBRARY

JAN 9 2003

This case involves claims and counterclaims relating to a disputed area of land along the common boundary between the Manougian and Ejdys properties. At trial the parties stipulated that the Manougians were the legal owners of the disputed area and Ms. Ejdys' counterclaim for adverse possession was tried. For reasons stated below, I find and conclude that her claim should succeed.

FINDINGS OF FACT

1. The Plaintiffs, Ara and Toni Manougian (hereinafter "Manougian") purchased their summer home on the Nubble Road in York, Maine on July 2, 1994. At the time, the abutting property to the west was owned by Julie and George Powell. The Powells subsequently sold their property to the United States of America in 1995, and the USA sold the property to the Defendant and Counterclaim Plaintiff, Gail Ejdys (hereinafter "Ejdys"), on March 19, 1996.

2. By Stipulation, the parties agreed that the boundary line running between their properties from the ocean side to Nubble Road, as is stated in Ejdys deed and in the Manougians' deed, is correctly depicted in the 1976 Pappas/Houliares

survey, obtained by a Manougians' predecessor in interest, and in the 1985 Powell/Moran survey, obtained by an Ejdys' predecessor in interest. By so stipulating, the parties agreed that the Manougians had met their burden by establishing legal title to the triangular parcel. What remains to be decided is whether or not Ejdys has met her burden of proving she has now established superior title to the same triangular parcel by meeting the elements of either adverse possession or title by acquiescence as asserted in her Counterclaim.

3. The Manougians commenced this action after Ejdys removed two standing sections of existing split rail fencing on Manougian property, and some aged shrubbery on the westerly side of that fencing, and replaced same with chain link fencing and new plantings. Ejdys also closed off access to the triangle parcel by running the new fencing at a right angle to her home. Ejdys testified that the chain link fence is located in the same position as the old split rail fencing.

4. Ms. Ejdys argues that the present location of a fence situated between the parties at the adjoining southerly corners is now the actual boundary. With regard to these contentions, the Court finds as follows:

   a. Anne E. Brown purchased the Ejdys' property in May of 1962. At the time of her purchase, a wooden fence of a distinctive "Y-shape" design existed along the entire southerly (Ocean) side of the property, as well as up the westerly side. In addition, the same fence turned and ran approximately 16 to 17 feet along the easterly (Manougian) side.

   b. At that time, and until the Manougians installed a split rail fence in 2000, the remaining area between the two houses was marked with shrubbery, by a staircase installed by Ms. Brown, and otherwise by lawn area.

c. Anne Brown's testimony was credible. She testified that she believed the fence on both the easterly and westerly side of her property marked the true boundaries. When she testified that she intended to occupy the property described in her deed, I find that she meant the property that she and her family actually used and not simply what a survey would reveal was described in the deed. She and her family occupied the premises, and she personally provided lawn care. She mowed the lawn area to the inside of the fence, weeded the area and maintained it. At no time did anyone attempt to interrupt her possession of the property. Anne Brown sold the property to George and Julie Powell in October of 1975.

d. George Powell testified[1] that the same fence existed when he bought the property in 1975. Mr. Powell's testimony concerning the fence was credible. He indicated that a "Mugo pine" was situated in the corner of the fenced area, inside the fence. Mr. Powell replaced the "Y-shaped" fence with 1) a split rail fence on the easterly and southerly sides, and 2) a stockade fence along the westerly side. He did the work himself over time. The new fence was located in the same place as the old one. Mr. Pappas, the former owner of the Manougian property, at one point disputed the location of some portion of the common bound. However the fence was not moved and Powell continued to maintain the new fence without interference. He mowed the grass between the houses. He believed he owned all of the property lying to the west of the 16 feet of fence between the two properties. The Powells sold the property to the United States of America in November of 1995. The fence between the

---

[1] Mr. Powell's deposition was admitted over objection.

two properties was part of a larger "fencing scheme" of enclosure, and clearly designated a line of occupation to all the world. Adverse possession of the corner in question was established no later than 1982. The area possessed included land lying westerly of and adjacent to the fence that had existed between the two properties since at least 1962.

e. Possession of the area established by Brown and Powell has not been abandoned by later owners. Ejdys bought the property with the Powell fence intact. Her testimony and photographs are credible. They show the split rail fence described by Powell and the new chain link fence she installed in 1999. Although there was differing testimony concerning the location of the new fence compared with the old fence along the common bound, I find the new fence to be in the same location as the old fence. Ms. Ejdys was on site when the new fence was installed; the fence company used the old post holes. Both Brown and Powell have seen the new fence and believe it to be in the same location as the old fences. Although Mr. Manougian believes that the new fence encroaches further on his property, the weight of the evidence suggests otherwise.

## CONCLUSIONS

I conclude that Ms. Ejdys is entitled to a declaratory judgment to the effect that she has acquired title to the disputed "Y-shaped" area by adverse possession.

The fair preponderance of evidence demonstrates that at least since Ms. Brown bought the property in 1962, Ms. Ejdys, or her predecessor in title, have been in possession of the disputed area and their possession has been

4

actual, open, visible, notorious, hostile, under claim of right and exclusive. *Striefel v. Charles-Keyte-Leaman Partnership, et al.. 733 A.2d 984 (Me. 1999).*

The Manougians seriously dispute three of the necessary elements of an adverse possession claim, whether Ms. Ejdys has proven that her property was held: (1) under claim of right, (2) continuous, and (3) exclusively.

The Manougians argue that Ms. Brown, when questioned by earlier owners in the Manougian chain, asserted that she owned exactly what the deed described. Since the parties have stipulated that legal title to the disputed area is with the Manougians, they argue that Ms. Brown has disclaimed any right to this area. However, as fact, I have found that Ms. Brown was not referring simply to a deed description but rather to the actual use of the area in question, and that she used and maintained it as her own. Further, the Powells, Ms. Ejdys' predecessors, were questioned by the Pappases, the Manougians' predecessors, about a survey showing that the Powells were encroaching. Mr. Powell ignored this and continued to use and maintain the disputed area as before.

The Manougians dispute that Ms. Ejdys and her predecessors continuously occupied the disputed area. However, at various times from 1962 on both properties were used as seasonal residences. Neither was continuously occupied throughout the period. However, occupation is "continuous" within the context of adverse possession when it involves "the kind and degree of occupancy (i.e. use and enjoyment) that an average owner would make of the property", *Striefel, supra* at 993. Both properties were seasonal residences, occasionally occupied on a full-time basis. The fact that from time to time the properties were unoccupied during the off-season does

5

break this continuity; nor does the several months hiatus between the Powell and Ejdys occupancy, while the property was owned by the USA. Ms. Ejdys' predecessors, Mrs. Brown and Mr. Powell occupied the property "continuously", both as a full-time and a seasonal residence for well over 20 years.

The Manougians argue that the disputed area was never closed off from use. While true that the old fences did not run the entire length of the disputed boundary, it is also true that Ms. Ejdys' predecessors consistently maintained (mowed, planted, weeded) the disputed area and that the Manougian predecessors ignored it. "Exclusive" does not mean that others were not permitted entry, but rather that the property was not shared with others. The evidence shows that Ms. Ejdys' predecessors exclusively used and maintained the disputed area.

Thus, on her counterclaim, I find and conclude that a declaratory judgment should be entered for Ms. Ejdys on her claims to the disputed area on the basis of adverse possession. Counsel will prepare a judgment suitable for recording to effectuate this decision.

Dated: January 6, 2003

PLAINTIFFS: Paul Cadigan, Esq.
PO Box 116
Kennebunk Me 04043

DEFENDANT: John Kugler, Esq.
1662 Post Rd #A-5
Wells Me 04090

G. Arthur Brennan
Justice, Superior Court

6