STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2005 MAR 22 A 8: 01

APR 20 2005

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-03-008

KEVIN WOOD,

    Plaintiff

v.

JEAN BELL,

    Defendant

ORDER

Before the court is plaintiff Kevin Wood's motion to alter or amend the final judgment entered in this case on August 2, 2004.[1]

Wood raises two issues — that the court should overturn the jury's finding that defendant Jean Bell had obtained title to the disputed parcel of land by adverse possession and that the jury's finding that Wood committed an intentional trespass is also not supported by the evidence. The court does not need to reach the second of those two arguments because it concludes that Wood is correct as to the first argument. If Bell did not own the disputed parcel by adverse possession, she cannot maintain an action for trespass and the verdict against Wood on her trespass claim must be vacated.

On a post trial motion to alter or amend judgment entered after a jury verdict, the court should not grant relief unless it can be shown that the Rule 50(a) standard has

---

[1] Rule 59(e) provides that a motion to alter or amend shall be "served" not less than 10 days after judgment. A cover letter from counsel for plaintiff reflects that service was made by mail on August 12, which was within the 10 day limit. The motion was not filed for several days thereafter. According to a subsequent letter from counsel, the motion was brought to the court for filing on August 12 but could not be filed on that date because of an early court closing implemented in August. Plaintiff's Rule 59(e) motion therefore appears to be timely, and defendant Jean Bell has not objected on the basis of timeliness.

been met — that no reasonable view of the evidence supports the jury's verdict. See, e.g., Maine Energy Recovery Co. v. United Steel Structure, Inc., 1999 ME 31 ¶6, 724 A.2d 1248, 1250. Under the particular circumstances of this case, I am constrained to conclude that this standard has been met on the adverse possession issue. In this connection the court has carefully considered the evidence and consulted both its own notes and the court reporter's notes. It ultimately concludes that, in light of the evidence and in light of Frost Vacationland Properties Inc. v. Palmer, 1999 ME 15, ¶¶11-12, 723 A.2d 418, 421, there is insufficient evidence to support the finding that Bell's possession of the disputed parcel was "open", "visible", "notorious", "hostile", and "under a claim of right" for the requisite 20 year period. This is true because of the special circumstances in this case — specifically, because Bell and her husband had entered into a contract to purchase the disputed parcel but title had never passed.

At the outset, the court should note that the equities in this case clearly favor Bell (at least as against Wood's predecessors in title, Francis and John Harriman) given that Bell and her former husband paid $550 to the Harrimans in 1974 as full payment for the disputed parcel, that Bell and her family been using the parcel (which is undeveloped and which abuts Bell's house lot) ever since, and that the Harrimans ultimately sold the property to John and Patricia Whittemore in 2002 without returning the Bells' money and without notice to the Bells.

The only writing evidencing the sale of the disputed parcel was a handwritten receipt dated September 5, 1974, which the evidence established was drafted around Jean Bell's kitchen table on that date. That document, in its entirety, reads as follows:

Sept. 5, 1974

Received of Jack & Jean Bell, Five Hundred and Fifty Dollars ($550.00) in payment in full of property abutting the land of Philbrick, from a point on the Hodgdon Rd along said Philbrick line

2

in a Northeasterly direction to the land of David Harriman, southerly to the land of Dennis White and in a somewhat westerly direction to the Hodgdon Rd intersecting with the back point of land belonging to Jack Bell as shall be stated on a deed yet to be surveyed and executed.

/s/ Frances C. Harriman
/s/ John H. Harriman

Trial Exhibit 4.

To convey title to property, there must be a manual transfer of a deed and an intent to pass title between a grantor and grantee. E.g., Estate of Deschenes, 2003 ME 35 ¶10, 818 A.2d 1026, 1029. The September 5, 1974 writing is not a deed. First, that writing by its terms expressly contemplates the future execution of a deed. Second, although the Short Form Deeds Act, 33 M.R.S.A. 761 et seq., has eliminated many of the technical legalities formerly required of deeds, some words of grant or conveyance are still necessary. See 33 M.R.S.A. §771. Such words are lacking in the September 5, 1974 writing. Finally, both Jean Bell and her ex-husband, Jack Bell, testified at trial that they did not consider the September 5, 1974 document to be a deed and had expected a deed to be delivered in the future.

As a result, the September 5, 1974 writing at best constituted a purchase and sale agreement which contemplated that passage of title would await the completion of a survey and the execution of a deed.[2] A survey was eventually obtained (although not until twelve years later, in 1986) but no deed was ever executed or transferred notwithstanding years of intermittent discussions between the Bells and the Harrimans, as testified to at trial and as reflected in the trial exhibits. Among the issues that prevented the Harrimans and the Bells from consummating the September 5, 1974

---

[2] The court had previously reserved this issue in its ruling on the parties' cross-motions for summary judgment. See order filed April 2, 2004 at 3-4. At trial, however, after the conclusion of Ms. Bell's presentation of evidence, the court ruled that the September 5, 1974 writing could not be construed as a deed and that Bell could only establish title to the disputed parcel by adverse possession.

agreement were the delay in obtaining a survey, a dispute as to who had the responsibility for obtaining the survey, and the Bells' decision at some point not to continue paying a share of the taxes assessed against the property.

The law disfavors the transfer of land by adverse possession. Striefel v. Charles-Keyt-Leaman Partnership, 1999 ME 111, ¶ 4, 733 A.2d 984, 988. To establish title by adverse possession a party must prove by a preponderance of the evidence that its possession and use of the property was (1) actual, (2) open, (3) visible, (4) notorious, (5) hostile, (6) under a claim of right, (7) continuous, (8) exclusive, and (9) for a duration exceeding 20 years. Id. ¶6, 733 A.2d at 989. All of those requirements are defined and discussed in the Striefel case. See 1999 ME 111 ¶¶9-18, 733 A.2d at 989-993.

With respect to the requirement that adverse possession be "open", "visible", and "notorious", there was evidence to support a finding that the Bells' activities were conducted with sufficient openness to be obvious to anyone viewing the premises. However, the purpose of the open, visible and notorious requirements "is to provide the true owner with adequate notice that a trespass is occurring and that the owner's property rights are in jeopardy." Striefel, 1999 ME 111 ¶11, 733 A.2d at 991. In this case, both Jean and Jack Bell acknowledged that they understood that a deed was necessary to transfer title and that they expected to receive a deed from the Harrimans once a survey was completed.

Under those circumstances, the Bells' occupation and use of the disputed parcel were not sufficient to put the Harrimans as true owners on notice that the Bells were not just occupying the property pursuant to their purchase and sale agreement and in contemplation of their future ownership but were instead asserting an adverse claim of present ownership without the necessity of a deed. See Frost Vacationland Properties Inc. v. Palmer, 1999 ME 15 ¶ 12, 723 A.2d at 421-22.

4

As noted above, the evidence was undisputed that although the September 5, 1974 purchase and sale contract contemplated a survey, no survey was performed until 1986 (Trial Exhibit 44). Various discussions between the Bells and the Harrimans throughout those intervening twelve years on the subject of a deed culminated in 1985, when an attorney for the Bells communicated the Bells' position that "the Harrimans should execute a deed which is in line with the signed contract" (Trial Exhibit 12) and thereafter threatened to bring a suit for specific performance (Trial Exhibit 20). At that point, therefore, the Bells were taking the position that the Harrimans were obligated to transfer title — not that the Bells already had title.

On the issue of hostility, the issue is whether Ms. Bell had the true owner's express or implied permission to be on the land. Striefel, 1999 ME 111 ¶ 13, 733 A.2d at 991. On this issue the Bells offered evidence that they never asked the Harrimans for permission to use the disputed parcel after the September 5, 1974 agreement was reached. However, the purchase and sale agreement created an inference that the Bells had implied permission to use the disputed parcel, at least during the period where the evidence was undisputed that both parties expected a deed would eventually be exchanged. None of the evidence offered by the Bells negated the inference of implied permission.

Similarly, under the "claim of right" requirement, a claimant by adverse possession must show that he was in possession of the land "as owner". Striefel, 1999 ME 111 ¶14, 733 A.2d at 991. The Bells testified that they believed they were the owners of the disputed parcel and acted as the owners once they had fully paid for the land and the Harrimans had signed the September 5, 1974 receipt (Trial Exhibit 4). They acknowledged, however, that they knew they needed a deed for formal title to pass and they made various efforts to obtain a deed from the Harrimans. In the particular

5

context of a pending purchase and sale agreement, a party making a claim of adverse possession must put the true owners on notice that she has not just entered the land in contemplation of her future purchase but is instead asserting that she has ousted the owners of their title.

In the analogous context of a disseisor asserting a claim by possession and improvement under 14 M.R.S.A. § 6001, the Law Court has ruled that a disseisin cannot be found where the prospective purchaser enters the land under a purchase and sale agreement without manifesting an intention to oust the real owner. See Frost Vacationland Properties Inc. v. Palmer, 1999 ME 15 ¶¶11-12, 723 A.2d at 421-22. Absent some evidence that Bell took some further step to appropriate the land and to assert ownership without having a deed, no ouster of ownership by adverse possession can be found to have occurred in this case. Id.[3]

Construed in the light most favorable to Ms. Bell, there may have come a point when the Bells manifested their intent to assert ownership of the disputed parcel even through they had never received a deed. At least as of 1985, however (less than 20 years before Wood commenced this action to quiet title), the only evidence of record was that the Bells' attorney was still advising the Harrimans that the Bells were seeking to enforce the September 5, 1974 agreement and were seeking delivery of a deed. See Trial Exhibits 12, 14 and 20. This certainly put the Harrimans on notice that the Bells believed they had purchased the property and were entitled to become the owners of the property. However, it did not put the Harrimans on notice that the Bells were asserting that they already were the owners of the property.

---

[3] Once again, it bears emphasis that so long as the Bells were still seeking delivery of a deed, the Harrimans were not put on notice that the Bells were asserting that they did not need a deed and that they owned the property by virtue of adverse possession regardless of any deed.

6

In the court's view, this ruling is not inconsistent with the court's prior ruling on the parties' cross motions for summary judgment. In the papers she submitted on those cross motions, Bell contended, <u>inter alia</u>, that the September 5, 1974 writing was itself a deed. The court disagreed. However, on the factual record as it existed at the time of summary judgment, it was still open for Bell to argue that she had nevertheless construed the September 5, 1974 document as a deed and had communicated to the Harrimans that she believed it constituted a deed and that it had transferred title to the disputed property. In those circumstances, it would have been conceivable for a claim of adverse possession to begin running immediately.

The evidence at trial, however, was that both Jean and Jack Bell knew that the September 5, 1974 writing was not a deed, that they also knew a deed was necessary to transfer title, and that they had expected the Harrimans to deliver them a deed. This cannot be squared with a finding that the Bells' claim of adverse possession began upon the execution of the September 5, 1974 document.

The entry shall be:

Plaintiff's motion to alter or amend the judgment is granted. Judgment shall be entered for plaintiff quieting title to the disputed parcel upon a finding that there is insufficient evidence to sustain the jury's verdict that defendant acquired the disputed parcel by adverse possession. Judgment shall also be entered for plaintiff on defendant's claim for money damages for trespass. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March 21, 2005

_____
Thomas D. Warren
Justice, Superior Court

7