1998 ME 18

**MAINE GRAVEL SERVICES, INC.**

v.

**Eleanor HAINING, et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs Oct. 23, 1997.

Decided Jan. 23, 1998.

David A. King, Bath, for plaintiff.

David R. Weiss, Stinson, Lupton, Weiss & Gabree, P.A., Bath, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Maine Gravel Services, Inc. appeals from a declaratory judgment entered in the Superior Court (Cumberland, *Saufley, J.*) declaring defendants Philip and Eleanor Haining,[1] and Paul and Patricia Sullivan, to be the

1. Philip Haining has since died and Eleanor Haining, as personal representative of the Estate

owners of real estate located in Brunswick. Maine Gravel contends that the Superior Court erred in finding that defendants carried their burden of proving adverse possession. We discern no error and affirm the judgment.

[¶ 2] This case involves competing claims to an unimproved ten-acre woodlot located in Brunswick, identified as lot 3A. The lot is bisected by a brook. Pursuant to 14 M.R.S.A. § 5951–5963 (1980) Maine Gravel brought a complaint seeking a declaratory judgment that it is the owner of lot 3A and to establish its boundary lines. The defendants, the Hainings and the Sullivans, filed a counterclaim seeking a declaration that they are the record owners of lot 3A by virtue of recorded deeds, or, in the alternative, that they have established title by adverse possession. The court found *record* title to be in Maine Gravel,[2] but concluded that the defendants had proven the elements of adverse possession, and accordingly, declared title to lot 3A to be in the defendants. The court based its conclusion on the use of the land by the Haining family consistent with ownership from 1945 forward.[3] Maine Gravel appeals from that judgment.

[¶ 3] Possession sufficient to establish title by adverse possession must be "actual, open, notorious, hostile, under claim of right, continuous, and exclusive for a period of at least twenty years." *Cates v. Smith,* 636 A.2d 986, 988 (Me.1994) (quoting *Emerson v. Maine Rural Missions Ass'n,* 560

A.2d 1 (Me.1989)). "Whether specific possessory acts are sufficient to establish title through adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances." *Emerson,* 560 A.2d at 2 (citing *McMullen v. Dowley,* 418 A.2d 1147, 1154 (Me.1980)). To establish their claim of adverse possession the claimants must show that their use and enjoyment of the property has been the same "in kind and degree as the use and enjoyment to be expected of the average owner of such property." *Howe v. Natale,* 451 A.2d 1198, 1200 (Me.1982). A trial court's determination of adverse possession will be upheld if supported by credible evidence in the record. *Id.*

[¶ 4] The court found that the defendants "demonstrated a consistent use of the land under their claim of title for 20 years,"[4] and that the Haining family treated the lot as its own since 1945. That use has included cutting wood for cedar posts, bridging the stream to allow foot and horse traffic, clearing out a small picnic area, placement of a log cabin on the lot by one of the defendants' children, and regular use of the property for such purposes as walking, hunting, fishing and recreation.[5]

[¶ 5] There was also evidence that a person paid the Haining family to do substantial logging on lot 3A. Harry Crooker, father of the two principal owners of Maine Gravel, had sought permission from the Haining fam-

---

of Philip Haining, has been substituted as a party pursuant to M.R. Civ. P. 25(a).

2. The finding that Maine Gravel established itself to be the record title holder is not challenged by the defendants on appeal.

3. The Sullivans purchased a two-acre portion of the land by deed. They rely on the action of the Hainings to establish their claim of adverse possession.

4. In concluding that the defendants had established their adverse possession claim, the trial court did not make clear whether it was relying on 14 M.R.S.A. § 801 (1980) or the common law. The analysis of adverse possession is the same for either, however. *Johnson v. Town of Dedham,* 490 A.2d 1187, 1189 (Me.1985) ("[S]ection 801 is a twenty year statute drafted in terms of an

absolute statute of limitations *which we have interpreted to be subject to the general elements of adverse possession.")* (emphasis added).

The court concluded that the defendants failed to prove their claim to adverse possession pursuant to 14 M.R.S.A. § 816 (1980) (requiring the adverse claimant to have claimed under a recorded deed), because the deed on which they relied did not adequately describe lot 3A.

5. Maine Gravel also asserts that the 1986 entry upon the property of one of its principals, Theodore Crooker, terminates the period of defendants' adverse possession, and that evidence of use of the property by defendants subsequent to that date is irrelevant. We disagree. *See Gonthier v. Horne,* 576 A.2d 745, 748 (Me.1990) (claimant's acts after the statutory period "rationally could be considered indicative" of the nature of his prior holding during that period).

ily to go on the lot to remove beaver dams in the 1960's. Central Maine Power Company (CMP) sought an easement over lot 3A and Roland Haining, the father of Philip Haining, gave a quit claim deed to CMP in 1947. The real estate taxes have been paid by the Haining family since 1945. Large piles of the cord wood cut on the lot were visible by the neighbors, including Maine Gravel's predecessors-in-interest.

[¶ 6] It is true, as Maine Gravel points out, that timber harvesting over the statutory period does not *necessarily* demonstrate adverse possession, *See Webber v. McAvoy*, 117 Me. 326, 329, 104 A. 513 (1918), *Webber v. Barker Lumber Co.*, 121 Me. 259, 265, 116 A. 586 (1922). Such activity, however, may, in various circumstances, demonstrate sufficient activity consistent with an adverse claim to prove adverse possession. *McMullen v. Dowley*, 418 A.2d at 1152.[6]

[¶ 7] The defendants contend that, consistent with reasonable forestry practices, their logging has been continuous over fifty years, and the court found that the use made of the property by the defendants was "in kind and degree the same as the use and enjoyment to be expected of the average owner of such property." *Howe v. Natale*, 451 A.2d at 1200. Moreover, defendants did far more than conduct the substantial timber harvests. They paid taxes on the lot, and demonstrated a "consistent" use of the land under their claim of title for over 20 years. *See Stowell v. Swift*, 576 A.2d 204, 205–206 (Me.1990).[7]

[¶ 8] Evidence that for over forty years, from 1945 to 1986, four generations of Hainings used the property as if it were theirs, and paid the taxes on it, supports the court's finding that the use of the lot made by the defendants is sufficient to establish title by adverse possession.

The entry is:

Judgment affirmed.

---

**6.** In *McMullen* we explained that, consistent with the precept that "each case must be separately considered on the basis of the particular circumstances presented," *id.* at 1152, the same degree of intermittent cutting in one location may be open and notorious, even if it would not be in a more remote location.

**7.** *Cf. Great Northern Paper Co., Inc. v. Eldredge*, 686 A.2d 1075, 1077 (Me.1996) (A claimant's use may be intermittent and need not be constant to be continuous for purposes of establishing a prescriptive easement "if it is consistent with the normal use that an owner of the property would make and is sufficiently open and notorious to give notice to the owner of the servient estate that the user is asserting an easement.").