1999 ME 111

**Joseph H. STRIEFEL**

v.

**CHARLES–KEYT–LEAMAN PARTNERSHIP et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 29, 1999.

Decided July 16, 1999.

---

Anthony J. Giunta, Ellsworth, for plaintiff.

Nathaniel R. Fenton, Fenton, Chapman, Fenton, Smith & Kane, P.A., Bar Harbor, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

RUDMAN, J.

[¶ 1] Joseph H. Striefel appeals from the judgment entered in the Superior Court (Hancock County, *Mead, J.*) in favor of Donna Brignull, Donald W. MacLeod III, and Martha M. Sikkema (collectively, "the MacLeods") in Striefel's action seeking a declaration of his rights in a strip of land. Striefel contends that: (1) the trial court applied the wrong standard of proof; and (2) the evidence was insufficient to establish the elements of adverse possession. We disagree, and affirm the judgment.

[¶ 2] The dispute in issue pertains to a portion of an approximately twenty-foot-wide strip of land in Bar Harbor. Striefel filed a declaratory judgment action against the MacLeods, seeking a declaration that he owned title to the land in question in fee simple absolute. The MacLeods claimed title by adverse possession to the portion of the land extending westward from the border of their deeded property line to a wire fence embedded in a tree line ("the parcel"). The trial court concluded that the MacLeods satisfied their burden of establishing title to the parcel by adverse possession. This appeal followed.

## I. STANDARD OF PROOF

[¶ 3] A party claiming title by adverse possession bears the burden of proving each of the elements of adverse possession by a "fair preponderance of the evidence." *Stowell v. Swift,* 576 A.2d 204, 205 (Me.1990); *Milliken v. Buswell,* 313 A.2d 111, 117 (Me.1973). Contrary to Striefel's contention, the court did not err in applying the preponderance of the evidence standard.

## II. ADVERSE POSSESSION

[¶ 4] As an initial matter, we recognize that the law disfavors the transfer of land by adverse possession.[1] *See, e.g., Grace v. Koch,* 81 Ohio St.3d 577, 692 N.E.2d 1009, 1011–12 (1998); *Potts v. Burnette,* 301 N.C. 663, 273 S.E.2d 285, 288 (1981). "Society generally prefers that traditional recordable conveyances control the status of titles for real property interests." *Nusekabel v. Cincinnati Pub. Sch. Employees Credit Union, Inc.,* 125 Ohio App.3d 427, 708 N.E.2d 1015, 1020 (1997) (quotations omitted). "[T]here is every presumption that the occupancy is in subordination to the true title, and if the possession is claimed to be adverse the acts of the wrong-doer must be strictly construed and the character of the possession clearly shown." *Webber v. Barker*

---

1.  Adverse possession has been aptly described as "a doctrine of ancient vintage and somewhat amorphous scope." *Smith v. Tippett,* 569 A.2d 1186, 1189 (D.C.1990) (discussing medieval origin of adverse possession). All fifty states have enacted some version of the adverse possession doctrine, *see* Thomas J. Micelli & C.F. Sirmans, *An Economic Theory of Adverse Possession,* 15 Intl Rev. L. & Econ. 161, 161 (1995), which has come under increasing criticism by courts and commentators. *See, e.g., Grace v. Koch,* 81 Ohio St.3d 577, 692 N.E.2d 1009, 1012 (1998) (stating that adverse possession "results in a legal titleholder forfeiting ownership to an adverse holder without compensation"); William G. Ackerman & Shane T. Johnson, *Outlaws of the Past: A Western Perspective on Prescription and Adverse Possession,* 31 Land & Water L. Rev. 79, 95 (1996) (advocating legislative abolition of adverse possession doctrine).

*Lumber Co.*, 121 Me. 259, 263, 116 A. 586, 587 (1922); *accord Miller v. Anderson,* 91 Wash.App. 822, 964 P.2d 365, 368 (1998) (stating that possession and use of property are presumed to be in subordination to title of true owner).

[¶ 5] "Title by adverse possession may be established either pursuant to the common law or statutory provisions." *Colquhoun v. Webber,* 684 A.2d 405, 410 (Me. 1996); *see also* 14 M.R.S.A. §§ 801–816 (1980 & Supp.1998). The MacLeods did not claim title by adverse possession pursuant to statute.[2] The common law applies.

[¶ 6] A party claiming title by adverse possession pursuant to the common law must prove by a preponderance of the evidence that its possession and use of the property were: (1) "actual"; (2) "open"; (3) "visible"; (4) "notorious"; (5) "hostile"; (6) "under a claim of right"; (7) "continuous"; (8) "exclusive"; and (9) of a duration exceeding the twenty-year limitations period. *See Falvo v. Pejepscot Indus. Park,* 1997 ME 66, ¶ 8, 691 A.2d 1240, 1243. "Whether specific acts are sufficient to establish the elements of adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances." *Id.* (internal quotations omitted).

[¶ 7] Adverse possession presents a mixed question of law and fact. *See Bowman v. Geyer,* 127 Me. 351, 355, 143 A. 272, 274 (1928); *Webber,* 121 Me. at 262, 116 A. at 587; *accord Miller,* 964 P.2d at 369 ("[W]hether the necessary facts exist is for the trier of fact, but whether those facts constitute adverse possession is an issue of law for the court to decide."). In *Webber,* 121 Me. at 262, 116 A. at 587, we stated:

In the abstract[,] what acts of dominion will result in creating title by adverse possession is a question of law. In this field[,] the powers of the court are primary and plenary. Whether those acts were really done, and the circumstances under which they were done, raise questions of fact. In this field[,] the powers of the [factfinder], in the first instance, are primary and plenary.

We will uphold a trial court's determination that a claimant established each of the elements of adverse possession "if supported by credible evidence in the record." *Maine Gravel Servs., Inc. v. Haining,* 1998 ME 18, ¶ 3, 704 A.2d 417, 418. "It is primarily for the factfinder to judge the credibility of witnesses and to consider the weight and significance of any other evidence." *Cates v. Smith,* 636 A.2d 986, 988 (Me.1994) (quotations omitted). "As such, [we] must give due regard to the trier of fact's determinations on credibility, weight[,] and significance of evidence." *Id.* (quotations omitted).

[¶ 8] We direct our attention to the elements of adverse possession, to determine whether the record contains sufficient credible evidence to support the trial court's determination that the MacLeods met their burden of establishing each of the elements.

A. "Actual"

[¶ 9] "Actual" means "[e]xisting in fact or reality." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 76 (1988). "Actual" possession and use exists when the land is in the "immediate occupancy and physical control" of the adverse possession claimant. BLACK'S LAW DICTIONARY 1163 (6th ed.1990). "Actual" possession and use consist of a literal, physical entry upon the land, and are manifested by "acts of occupancy [that] indicate a present ability to control the land and an intent to exclude others from such control." *Flowers v. Roberts,* 979 S.W.2d 465, 469 (Mo.Ct. App.1998). The purpose of this requirement is to give the true owner notice of the *extent* of the trespass, because adverse possession generally does not extend be-

**2.** 14 M.R.S.A. § 810–A (Supp.1998).

yond the land that the claimant actually occupies.[3] *See Solomon's Rock Trust v. Davis,* 675 A.2d 506, 509–10 (Me.1996); *Estate of Stone v. Hanson,* 621 A.2d 852, 854 (Me.1993); *Emerson v. Maine Rural Missions Ass'n,* 560 A.2d 1, 2–3 (Me.1989). Whether a claimant "actually" possessed and used the land at issue will depend on the nature and location of the property, the potential uses of the property, and the kind and degree of use and enjoyment to be expected of the average owner of such property. *See Emerson,* 560 A.2d at 2; *Flowers,* 979 S.W.2d at 469.

[¶ 10] The record indicates that the entire parcel remained in the immediate occupancy and physical control of the MacLeod family from 1950 to 1995. Brignull testified that her family in fact possessed and used the portion of the land between the western boundary of their deeded property line and the fence embedded in the tree line, but not the land beyond the fence. Brignull's testimony and photographs indicate that the MacLeod family used the parcel in a typically residential manner that included recreation, storage, and gardening.[4] The MacLeod family's possession and use of the parcel were "in kind and degree the same as . . . to be expected of the average owner of such property," and were sufficient to put the true owner on notice of the extent of their trespass. *Baptist Youth Camp v. Robinson,* 1998 ME 175, ¶ 13, 714 A.2d 809, 814 (quotations omitted). The record contains sufficient credible evidence to support the trial court's finding that the MacLeods established "actual" possession and use, throughout the limitations period, of that portion of the land extending to the fence within the tree line.

B. "Open," "Visible," and "Notorious"

[¶ 11] "Open" means without attempted concealment. *See, e.g., Foot v. Bauman,* 333 Mass. 214, 129 N.E.2d 916, 919 (1955); *Hindall v. Martinez,* 69 Ohio App.3d 580, 591 N.E.2d 308, 310 (1990). "Visible" means capable of being seen by persons who may view the premises.[5] *See* Gaudio, *American Law Of Real Property* § 11.02[3] at 11–20 to –21 (1994). "Notorious" means known to some who might reasonably be expected to communicate their knowledge to an owner maintaining a reasonable degree of supervision over his property.[6] *See, e.g., Foot,* 129 N.E.2d at

3. Under certain circumstances, however, an adverse possessor's occupancy of a portion of a unitary tract of land may constructively extend to the entire tract. *See, e.g., Inhabitants of Town of Island Falls v. A.K.R. Inc.,* 157 Me. 147, 150, 170 A.2d 395, 397 (1961).

4. For example, the MacLeod family used the parcel as, *inter alia,* a driveway, lawn, and garden. They raked and mowed the parcel, trimmed bushes and lilacs, maintained a compost pile, and formed a rock garden. Brignull's father stored wood and building materials on the parcel, and plowed or shoveled the parking area in the winter. Her mother planted forsythia bushes. When Brignull was in high school, her family stored a twelve-foot sailboat on the parcel. They often kept a picnic table there. The MacLeods played with their dog and walked it on the parcel. The MacLeod children and their neighborhood friends played on the parcel, and skated on it when it froze in the winter. Brignull's own children later played in the parcel, and continued to skate on the parcel when it froze in the winter.

5. An adverse possession claimant would fail to satisfy the visibility element if the encroachment covered a relatively small portion of the adjoining owner's land and the fact of the intrusion was not readily apparent to the naked eye, but would require an on-site survey to discern (*e.g.,* in urban areas where boundary lines are infrequently delineated by markers). *See, e.g., Mannillo v. Gorski,* 54 N.J. 378, 255 A.2d 258, 263 (1969). In such circumstance, "[t]he only method of certain determination would be by obtaining a survey each time the adjacent owner undertook any improvement at or near the boundary, and this would place an undue and inequitable burden upon the true owner." *Id.* at 263–64. However, the MacLeod family's encroachment was readily apparent to the naked eye.

6. According to BLACK'S LAW DICTIONARY 1063 (6th ed.1990), "notorious" possession and use are "so conspicuous that [they] are generally known and talked of by the public or the people in the neighborhood."

919; *Hindall*, 591 N.E.2d at 310. The purpose of these three requirements is to provide the true owner with adequate notice that a trespass is occurring, and that the owner's property rights are in jeopardy. *See Emerson*, 560 A.2d at 2–3. Hence, a claimant will fail to satisfy the requirements of openness, visibility, and notoriety unless the possession and use were sufficiently apparent to put the true owner on notice that the claimant was making an adverse claim of ownership. *See id.; Maine Gravel Servs., Inc.*, 1998 ME 18, ¶ 3, 704 A.2d at 418. "Such notice need not be actual; it is sufficient to prove acts so open[, visible,] and notorious that the owner's knowledge of them and of their adverse character may be presumed." *Emerson*, 560 A.2d at 3. (citations omitted); *see also Estate of Stone*, 621 A.2d at 854.

[¶ 12] The MacLeod family's possession and use of the parcel were sufficiently apparent to put the true owner on notice that they were making an adverse claim of ownership. *See Emerson*, 560 A.2d at 3. First, the record does not indicate, nor does Striefel assert, that the MacLeods attempted to conceal their possession and use of the parcel (*i.e.*, that the possession and use were not "open"). Second, Brignull testified that, throughout the limitations period, neighbors and passersby on the bordering municipal street were able to clearly observe her family's possession and use of the parcel (*i.e.*, the possession and use were "visible"). Third, the record indicates that the possession and use were "notorious" because, *inter alia*, the families of the neighborhood children who played on the parcel with the MacLeod children might reasonably have been expected to communicate their knowledge of the possession and use to a true owner

maintaining a reasonable degree of supervision over its property. The record supports the trial court's finding that the MacLeod family's possession and use were "open," "visible," and "notorious" throughout the limitations period.

## C. "Hostile"

[¶ 13] "Hostile" simply means that the possessor does not have the true owner's permission to be on the land, *see Falvo*, 1997 ME 66, ¶ 9, 691 A.2d at 1243, and "has nothing to do with demonstrating a heated controversy or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the servient estate."[7] *Glidden v. Belden*, 684 A.2d 1306, 1318 n. 19 (Me.1996) (internal quotations omitted). Permission negates the element of hostility, and precludes the acquisition of title by adverse possession. *See, e.g., Miller*, 964 P.2d at 369 ("Use with the true owner's permission ... cannot be hostile to the true owner's title."). Permission can be either express or implied. *See id.* Brignull's testimony clearly indicates that the MacLeods received neither express nor implied permission from the true owner to use the parcel. The record supports the trial court's finding that the MacLeod family's possession and use of the parcel were "hostile" throughout the limitations period.

## D. "Claim of Right"

[¶ 14] "Under a claim of right" means that the claimant "is in possession as owner, with intent to claim the land as [its] own, and not in recognition of or subordination to [the] record title owner." BLACK'S LAW DICTIONARY 248 (6th ed.1990). "By its very nature[,] adverse possession involves an act of disseisin; that is, exclusive possession of another's

---

7. Some courts and commentators fail to distinguish between the elements of *hostility* and *claim of right*, or simply consider *hostility* to be a subset of the *claim of right* requirement. *See, e.g., Johnson v. Stanley*, 96 N.C.App. 72, 384 S.E.2d 577, 579 (1989) (stating, with regard to prescriptive easements, that "ad- verse," "hostile," and "claim of right" are, "for the most part, synonymous" under North Carolina law). To avoid redundancy and pursue clarity, however, the better practice is to distinguish between these two elements. Under Maine law, the two elements are distinct. *See Falvo*, 1997 ME 66, ¶ 8, 691 A.2d at 1243.

land with intent to claim title." [8] *Estate of Stone*, 621 A.2d at 854.

■ [¶ 15] As Brignull's testimony and photographs demonstrate, the MacLeod family intentionally possessed and used the parcel as though they owned it, without recognition of or subordination to the true owner. Striefel does not assert, nor does the record indicate, that the MacLeod family possessed and used the parcel under a mistaken assumption of ownership.[9] The record supports the trial

---

**8.** In *Central Maine Power Co. v. Rollins*, 126 Me. 299, 302, 138 A. 170, 172 (Me.1927) (quotations omitted), we stated:

> It is elementary law ... that adverse possession which will ripen into title must be under a claim of right. Not every unlawful entry into lands of another will work a disseizin, and dispossession is not necessarily disseizin. To make a disseizin, the possession taken by the disseizor must ... [import] a denial of the owner's title in the property claimed, otherwise[,] however open, notorious, constant and long continued it may be, the owner's action will not be barred.

**9.** Historically, two distinct lines of thought have emerged regarding the intent necessary to establish title by adverse possession in mistaken boundary cases. According to the minority or Maine rule, based on *Preble v. Maine Cent., R.R. Co.*, 85 Me. 260, 264, 27 A. 149 (1893): "[O]ne who by mistake occupies ... land not covered by his deed, with no intention to claim title beyond his actual boundary, wherever that may be, does not thereby acquire title by adverse possession to land beyond the true line." In contrast, the majority or Connecticut rule, based on *French v. Pearce*, 8 Conn. 439 (1831), recognizes adverse possession even when the occupancy began as a result of a mistaken, rather than intentional, trespass.

> Section 810–A of Title 14 provides:
>
> **§ 810–A. Mistake of boundary line establishes hostility**
>
> If a person takes possession of land by mistake as to the location of the true boundary line and possession of the land in dispute is *open* and *notorious, under claim of right*, and *continuous* for the statutory period, the *hostile* nature of the claim is established and no further evidence of knowledge or intention of the person in possession is required.

14 M.R.S.A. § 810–A (Supp.1998) (emphasis added). The Legislature in drafting section 810–A apparently attempted by legislative fiat to depart from the Maine rule, at least with respect to the statutory provisions. According to the statement of fact accompanying the bill that resulted in the enactment of section 810–A:

> This bill adopts the position now held by a majority of jurisdictions that, if the occu-

pancy of land beyond a true boundary line is *actual, open, notorious* and *continuous*, it is *hostile* and *adverse* even though the original occupancy took place due to ignorance, inadvertence or mistake, without the intention to claim lands of another. It thus overrules the positions adopted by the Maine courts in [*Preble v. Maine Cent. R.R. Co.*, 85 Me. 260, 27 A. 149 (Me.1893),] and [*Landry v. Giguere*, 127 Me. 264, 143 A. 1 (1928),] that "intention to hold only to [the] true boundary wherever that boundary might be defeats [a] claim of one seeking title by adverse possession to land beyond the true boundary." [*McMullen v. Dowley*, 483 A.2d 698, 700 (Me.1984) (citing *Landry* ).]

L.D. 1076, Statement of Fact (116th Legis.1993) (emphasis added). No legislative debate or committee report accompanied the bill. The only written statement in support of the enactment was from the Central Maine Title Company on behalf of the Maine Association of Realtors, which briefly stated that the provision would "help clarify the law" and align Maine with the majority of states.

"Hostile" and "claim of right" are terms of art. The Legislature, in its purported attempt to "overrule" the Maine rule, inartfully provided that a mistake as to the location of the true boundary line does not preclude a finding of *hostility* if the adverse claimant takes possession of the land, *inter alia*, under a *claim of right*. See 14 M.R.S.A. § 810–A. The so-called Maine rule, however, primarily pertains to the *claim of right* requirement, rather than the requirement of *hostility*.

We have heretofore cited to 14 M.R.S.A. § 810–A in only three cases. First, in *Cates v. Smith*, 636 A.2d 986, 988 n. 4 (Me.1994), we stated:

> We note that the Legislature has recently removed the requirement that the claimant have the specific intent to claim the land of another as articulated in [*Landry v. Giguere*, 127 Me. 264, 268, 143 A. 1, 3 (1928),] and [*McMullen v. Dowley*, 483 A.2d 698, 700 (Me.1984) ]. P.L.1993, ch. 244, § 1 (codified at 14 M.R.S.A. § 810–A (Supp.1993)) (effective Oct. 13, 1993). *See also* L.D. 1076, Statement of Fact (116th Legis.1993). Because this action was filed prior to the effective date of the legislation, Cates is required to establish this adverse intent.

court's finding that the MacLeod family possessed and used the parcel "under a claim of right" throughout the limitations period.

## E. "Continuous"

[¶ 16] "Continuous" means "occurring without interruption." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 213 (2d ed.1995). Like *actual* possession and use, *continuous* possession and use requires only the kind and degree of occupancy (*i.e.*, use and enjoyment) that an average owner would make of the property. *See Maine Gravel Servs., Inc.*, 1998 ME 18, ¶ 3, 704 A.2d at 418. Brignull testified that her family's possession and use of the parcel occurred without interruption from 1950 to 1995. The record supports the trial court's conclusion that the possession and use were "continuous" throughout the limitations period.

## F. "Exclusive"

[¶ 17] "Exclusive" possession and use means that the possessor is not sharing the disputed property with the true owner or public at large.[10] *See Emerson*, 560 A.2d at 3. Brignull testified that,

although her family allowed neighborhood children to play with them on the parcel, they did not share the parcel with the true owner or the public at large. The record supports the court's finding that the Mac-Leod family's possession and use were "exclusive" throughout the limitations period.

## G. Twenty–Year Limitations Period

[¶ 18] A claimant must prove that its possession and use satisfied each of the aforementioned elements simultaneously "for a period of at least twenty years." *Maine Gravel Servs., Inc.*, 1998 ME 18, ¶ 3, 704 A.2d at 418 (quotations omitted). Brignull testified that her family possessed and used the parcel consistently from 1950 to 1995. The record supports the court's finding that the duration of the family's possession and use exceeded the duration of the twenty-year limitations period.

[¶ 19] We conclude that the record contained sufficient credible evidence to support the trial court's conclusion that the MacLeod family's possession and use of the parcel were "actual, open, [visible,][11] notorious, hostile, under a claim of right,

*See* P.L.1993, ch. 244, § 2 (application of Act).

Second, in *Crosby v. Baizley*, 642 A.2d 150, 153 n. 2 (Me.1994), we stated:
Recently, the Legislature enacted 14 M.R.S.A. § 810–A (Supp.1993) ("If a person takes possession of land by mistake as to the location of the true boundary line and possession of the land in dispute is open and notorious, under claim of right, and continuous for the statutory period, the hostile nature of the claim is established and no further evidence of the knowledge or intention of the person in possession is required."). Although this statute deals with "mistake" in adverse possession cases, the [L]egislature expressly provided that it apply only to actions filed after October 13, 1993.

Third, in *Baptist Youth Camp v. Robinson*, 1998 ME 175, ¶ 13, 714 A.2d at 814, we stated:
Although 14 M.R.S.A. § 810–A no longer requires adverse possession claimants to have the specific intent to claim the land, nevertheless they must establish possession

by "an actual use and enjoyment of the property which is in kind and degree the same as the use and enjoyment to be expected of the average owner of such property." *Howe v. Natale*, 451 A.2d 1198, 1200 (Me.1982).

Since we apply the common law doctrine of adverse possession in the present case, we need not apply the statutory provisions or further address the ambiguities of section 810–A.

10. "Exclusive possession by [an] adverse possessor means that [the] adverse possessor must show an exclusive dominion over the land and an appropriation of it for his own use and benefit, and not for another." BLACK'S LAW DICTIONARY 565 (6th ed.1990).

11. To satisfy the burden of establishing title by adverse possession, a claimant must prove that "the estate in question is ... visibly ... held by [the] claimant." *Falvo*, 1997 ME 66, ¶ 8, 691 A.2d at 1243. "[A]dverse possession requires that acts of possession be sufficiently visible ...." *Emerson*, 560 A.2d at 3.

continuous, and exclusive for a period of at least twenty years." *Maine Gravel Servs., Inc.,* 1998 ME 18, ¶ 3, 704 A.2d at 418; *see also Falvo,* 1997 ME 66, ¶ 8, 691 A.2d at 1243. Therefore, contrary to Striefel's contention, the trial court did not err in determining that the MacLeods satisfied their burden of establishing title by adverse possession.

The entry is:

Judgment affirmed.