STATE OF MAINE                                                  SUPERIOR COURT
                                                                  CIVIL ACTION
YORK, ss.                                                    DOCKET NO. CV-05-057

                                                              ~~SAF~Y~-~ 3'~ · ~~~~

DAVID HILL,

                              Plaintiff


        v.                                                          ORDER


SHAW BROTHERS CONSTRUCTION, INC.
& S.B. DAYTON, INC.,

                            Defendants


        This case comes before the Court on Defendants Shaw Brothers Construction,

Inc. & S.B. Dayton, Inc.'s Motion for Summary Judgment on Plaintiff Mr. Hill's claim of

common law adverse possession, statutory adverse possession, and the doctrines of

acquiescence and practical location. Following hearing, the Motion is Granted in part

and Denied in part.

                            **FACTUAL BACKGROUND**

        This action revolves around the disputed ownership of an uncultivated heavily

forested parcel of land in Dayton, Maine. All parties agree that the disputed land is

described as:

> In Dayton beginning at a pitch tree standing on the southerly side of the old
> Gould Road, so called, spotted on 4 sides, and marked with the letters H.H.,
> thence North easterly, by said old road, 26 rods or till it comes to the old
> corporation line, thence South about 23 ½ degrees East, by said old corporation
> line, 71 rods, or till it comes to a stone set in the ground, thence North about 21
> degrees West, 78 rods to the place begun at, containing 12 acres, more or less.

        Mr. Hill owns five properties in the area of the disputed land. One of Mr. Hill's

properties is located to the north and west of the disputed land. A small part of this

property abuts the eastern boundary of the disputed land. S.B. Dayton's property, which it currently uses as a gravel pit, surrounds the disputed land on the other three sides. In and around 1979, Mr. Hill researched the ownership of the disputed land and could not identify the record owners other than that ownership was probably splintered among many heirs of the L.L. Clark Lumber Company. In that same year, in order to establish a claim of ownership to the disputed land, Mr. Hill was given a deed to the disputed land from Dorothy and Harley Hill. Mr. Hill was aware that Dorothy and Harley Hill did not have an ownership interest in the disputed land at that time. The false deed was merely drawn up to establish a temporal starting point for Mr. Hill's adverse possession claim. Mr. Hill did not record the deed until 1999.

Beginning in 1979, Mr. Hill has been present on the disputed land approximately forty times each year. He used the land to cut wood, between 300 and 900 trees each year. He mostly cut wood from the middle portion of the land. Mr. Hill created a "woods road" roughly through the middle of the parcel.[1] He often cut smaller trees to allow the bigger ones to grow. In 1986 and 2002, Mr. Hill hired logger Dan Dunnells to thin out the disputed land. During these twenty years, Mr. Hill walked the boundary lines of the disputed land thirty times per year and flagged the boundary lines

---

[1] Defendants dispute that Mr. Hill created a "woods road." They argue that Mr. Hill was asked in his deposition to draw a dotted line around where he cut wood and that the dotted line he drew does not form woods road. They also argue that Mr. Hill's affidavit implies that woods road extends the entire length of the disputed land. The language of paragraph 10 of Mr. Hill's affidavit is as follows:

> "Exhibit A2 is a picture of the disputed land showing the woods road that is roughly in the middle of the disputed parcel.... I created the woods road over the years beginning in 1979 as I cut trees for firewood. Dan Dunnells, a logger I hired to cut wood, widened the road so he could get a skidder deeper into the disputed land."

The fact that Mr. hill drew a U-shaped dotted line around roughly half of the disputed land starting at the eastern boundary line with his property does not mean that he did not create a woods road in the middle of the property. The question asked of Mr. Hill in his deposition was where he cut trees, not where he cleared a woods road. The Court reads Mr. Hill's affidavit to say that the woods road was created to provide easier access to tree cutting. That does not mean that the only trees cut were directly down the middle of the land. The affidavit also does not state that woods road runs the entire length of the property.

2

periodically, when necessary. The corners of the disputed land are all marked by visible iron pins, which are noted on the Defendant's gravel pit plan. Mr. Hill also-"swamped" the boundaries of the disputed land down near the Shaw Brothers property by cutting a six-foot wide swath.

Mr. Hill gave permission to hunters to hunt on the land. He also gave permission to Wade Junkins to cut wood on the land. Mr. Hill's daughter also went horseback riding on the disputed land. According to the tax records from the Town of Dayton, Mr. Hill has paid taxes on the disputed land since at least 1990. Mr. Hill believes he has paid taxes on the disputed land prior to 1990, however, the tax records do not show this one way or the other. The following people knew that Mr. Hill claimed the disputed land as his own: Dorothy Hill; Harley Hill; Clement Meserve; Mr. Hill's son, daughter, and wife; Alfred Grantham; David Grantham; Everett Moore; and Lindy Glover.

In 2004, the Shaw Brothers located the record owners of the disputed land and negotiated the purchase of record title from them. They are the current record owners of the disputed land. Peter Clark, the only true owner to be located, is in his 60's and has not been on the property since he was a child.

The following material facts are in dispute: whether Mr. Hill cut wood from the middle of the disputed land or also along the eastern boundary line, (SMF ¶ 33, RSMF ¶ 33); whether or not more than fifty people, without permission, would ride their ATVs through the disputed land, (SMF ¶ 38, RSMF ¶ 38); whether Mr. Hill told Danny Shaw that he did not tell anyone about his intentions to take the property by adverse possession. (SMF ¶ 48, RSMF ¶ 48); whether Defendants acquiesced to the boundaries of the disputed lands until they began clearing the land in 2000 or 2001. (RSMF ¶¶ 114, 115).

3

## DISCUSSION

a. **Common Law Adverse Possession**

Possession sufficient to establish title by adverse possession must be "actual, open, notorious, hostile, under a claim of right, continuous, and exclusive for a period of at least twenty years." *Maine Gravel Services, Inc. v. Haining*, 1998 ME 18, ¶ 3, 704 A.2d 417, 418. "Whether specific possessory acts are sufficient to establish title through adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances." *Id.* For a claimant to establish a claim of adverse possession he must show that his use and enjoyment of the property has been the same "in kind and degree as the use and enjoyment to be expected of the average owner of such property." *Id.*

The Court reviews a motion for summary judgment in the light most favorable to the non-moving party to determine whether the parties' statements of material fact and the referenced record evidence indicate any genuine issue of material fact. *Bayview Bank, N.A. v. The Highland Gold Mortgagees Really Trust*, 2002 ME 178, ¶ 9, 814 A.2d 449, 451. When a defendant moves for summary judgment, it is plaintiff's burden to establish a *prima facie* case for each element of his cause of action that is properly challenged in the defendant's motion. *Curtis v. Porter*, 2001 ME 158, ¶ 8, 784 A.2d 18. Here, for Mr. Hill to survive summary judgment, he must demonstrate a *prima facie* case that his possession of the disputed land was actual, open, notorious, hostile, under a claim of right, continuous, and exclusive for a period of at least twenty years.

1. Actual

Actual possession consists of a literal, physical entry upon the land, and is manifested by "acts of occupancy that indicate a present ability to control the land and

4

an intent to exclude others from such control." *Striefel v. Keyt-Leaman Partnership*, 1999 ME 111, ¶ 9, 733 A.2d 984, 989. Actual possession depends on the nature and location or the property, the potential uses of the property, and the kind and degree of use to be expected of the average owner of such a property. *Id.*

Here, the undisputed facts are that the land is uncultivated and heavily forested. Mr. Hill physically entered the land forty times a year to cut a substantial amount of wood. He hired a logger to assist him. He created a woods road to facilitate the woodcutting. He consciously managed the forest by cutting the smaller trees to allow the bigger ones to grow. A fact finder could properly conclude that Mr. Hill's actions on the disputed land amounted to more than occasional acts of trespass. Furthermore, his activity is in line with the potential uses of such a property and the kind of use expected of an average owner of such a property.

2.    Open, Visible, and Notorious

"Open means without attempted concealment. Visible means capable of being seen by persons who may view the premises. Notorious means known to some who might reasonably be expected to communicate their knowledge to an owner maintaining a reasonable degree of supervision over his property." *Streifel*, 1999 ME 111, ¶ 11, 733 A.2d 984, 990 (quotation omitted). "The purpose of these three requirements is to provide the true owner with adequate notice that a trespass is occurring, and that the owner's property rights are in jeopardy." *Id.* at 991. This notice need not be actual. *Id.* It is sufficient to prove open, visible, and notorious acts such that the owner's knowledge of them and of their adverse character may be inferred. *Id.*

Here, Defendants argue that Mr. Hill's intention to conceal his possession of the disputed land is evidenced by not recording the 1979 deed until 1999, and by cutting wood in the middle of the property rather than near the boundaries where the public

5

would see his actions. Notwithstanding, Mr. Hill spent forty days a year on the property cutting wood, hired a logger to cut wood, gave permission to hunters to hunt on the land, and continuously flagged and marked the boundaries. In light of these actions, the record simply does not conclusively support a finding that Mr. Hill intended to conceal his possession of the land.

Visibility and notoriety on a heavily forested uncultivated parcel can be difficult to prove. [2] The Law Court has shown a reluctance to permit secret encroachments on large woodland areas to ripen into title. *Webber v. McAvoy*, 117 Me. 326, 104 A. 513; *Stewart v. Small*, 119 Me. 269, 110 A. 683; and *Webber v. Barker*, 121 Me. 259, 116 A. 586. However, although timber harvesting does not necessarily demonstrate adverse possession, depending on the circumstances of each case, such activity may demonstrate sufficient activity consistent with an adverse claim to prove adverse possession. *Maine Gravel Services, Inc. v. Haining*, 1998 ME 18, ¶ 6, 704 A.2d at 419.

The circumstances of this particular case indicate that Mr. Hill was continuously marking the boundaries and asserting his control over the land. Additionally, Mr. Hill paid taxes on the disputed land at least since 1990. This official record provides notice to the public and the true owner of Mr. Hill's actions. Mr. Hill told his family, friends, and hired help of his intentions with the disputed land. It is reasonable, if the true owner was known, that these people would have communicated their knowledge of Mr. Hill's intentions to the true owner. Based on the record evidence there is a genuine issue of fact concerning whether Mr. Hill's possession and use of the disputed land was

---

[2] The visibility element is also difficult to prove in urban areas where boundary lines are infrequently delineated by markers and the encroachment covers a relatively small portion of the adjoining owner's land. *Streifel*, 1999 ME 111, n5, 733 A.2d at 991.

sufficiently apparent to put the true owner on notice that the claimant was making an adverse claim of ownership.

### 3. Hostile

"Hostile simply means that the possessor does not have the true owner's permission to be on the land and has nothing to do with demonstrating a heated controversy or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the servient estate." *Streifel*, 1999 ME 111, ¶ 13, 733 A.2d at 991. Here, the true owner was unaware of anything that was happening on the disputed land. It is clear that Mr. Hill did not have the owner's permission to possess the land.

### 4. Under a Claim of Right

"Under a claim of right means that the claimant is in possession as owner, with intent to claim the land as his own, and not in recognition of or subordination to the record title owner." *Streifel*, 1999 ME 111, ¶ 14, 733 A.2d at 991. Mr. Hill executed a false deed to establish his ownership in the disputed property. He continuously marked the boundaries, used the land to cut wood, gave permission to others to use it, and hired others to work the land. He also paid taxes on the land at least since 1990. *See McMullen v. Dowley*, 418 A.2d 1147, 1151 (Me. 1980) (paying taxes on land tends to prove claim of title).

Defendants argue that many others used the land to ride ATVs without Mr. Hill's permission. Even if that were true, just as occasional acts of trespass on uncultivated lots are insufficient to establish a claim of adverse possession, *Webber v. McAvoy*, 117 Me. 326, 104 A. 513; *Stewart v. Small*, 119 Me. 269, 110 A. 683; and *Webber v. Barker*, 121 Me. 259, 116 A. 586, occasional ATV trespassers do not establish that Mr. Hill does not possess the disputed land under a claim or right.

7

5. Continuous, Exclusive, and for at least 20 Years

Continuous simply means occurring without interruption. *Streifel*, 1999 ME 111, ¶ 16, 733 A.2d at 993. Exclusive means that the possessor is not sharing the disputed property with the true owner or the public at large. *Id.* ¶ 17. Here, Defendants argue that the public uses the property by driving their ATVs over the property. However, as mentioned above, Mr. Hill has continuously maintained control over the disputed land since 1979. He has granted permission to those who sought permission to use the land. Finally, there is no dispute that he did this for twenty years from 1979 until 1999. The Court concludes that Mr. Hill has met his burden of establishing a prima case for each of the elements of common adverse possession.

b. **Statutory Adverse Possession of Uncultivated Lands**

Pursuant to 14 M.R.S.A. § 816, the legislature set forth the requirements for obtaining title by adverse possession to uncultivated land in incorporated places. These requirements include "a claim to the land under a recorded deed or deeds, 'exclusive, peaceable, continuous and adverse possession' of the claimed land, and payment of taxes, all for a period of twenty years." *Estate of Stone v. Hanson*, 621 A.2d 852, 853 (Me. 1993). In this case, Mr. Hill attests that the deed was not recorded for 20 years. With that admission alone, Mr. Hill is unable make out a prima facie case of statutory adverse possession. He also is unable to attest, based on personal knowledge that he paid taxes on the disputed land from 1979-1999.

c. **Acquiescence and Practical Location**

Defendants assert that the doctrines of acquiescence and practical location are applicable only when there is a boundary dispute. *Marja Corporation v. Allain*, 622 A.2d 1182 (Me. 1993); *Calthorpe v. Abrahamson*, 441 A.2d 284 (Me. 1982) ("Calthorpe I"). As such, they argue that because the parties do not dispute the boundaries of the disputed

8

land, but rather the ownership of that land, these doctrines are inapplicable. Mr. Hill argues that the doctrines broadly apply to disputes between adjoining landowners. In the alternative, he argues that the doctrines apply because the disputed land forms the common boundary between the respective properties of the parties.

The location and description of the boundaries of the disputed land are not in dispute. The only dispute lies in the ownership of the land itself. The doctrine of practical location provides:

> Where adjoining owners deliberately erect monuments, fences, or make improvements on a line between their lands on the understanding that it is the true line, it amounts to a practical location . . . . A practical location may be along a wrong line, and either of the parties so making may be estopped to claiming to the true line, especially when acquiesced in over a long period of years.

This doctrine makes four references to location of a line, which the Court interprets to mean the boundary line between adjoining property owners. There is no record evidence to support that the parties deliberately and collectively erected a monument or fence, or made improvements on a line, albeit the wrong line, between their lands.

Turning to doctrine of acquiescence, Maine courts have applied this doctrine to cases concerned with "the alleged existence and/or enforceability of an express agreement to establish a boundary in a particular location which is not in accord with the deed." *Calthorpe I*, 441 A.2d at 289 (collecting cases); *See, e.g., Milliken v. Buswell*, Me., 313 A.2d 111 (1973); *Bemis v. Bradley*, 126 Me. 462, 139 A. 593 (1927); *Faught v. Holway*, 50 Me. 24 (1861); *Moody v. Nichols*, 16 Me. 23 (1839). The elements to establish acquiescence require a showing of "1) possession up to a visible line marked clearly by monuments, fences or the like; 2) actual or construction notice to the adjoining landowner of the possession; 3) conduct by the adjoining landowner from which

9

recognition and acquiescence not induced by fraud or mistake my be fairly inferred; 4) acquiescence for a long period of years such that the policy behind the doctrine of acquiescence is well-served by recognizing the boundary." *Id.* This doctrine recognizes that "long continued recognition, acquiescence, and occupation [ ] imply a tacit agreement, as binding as an express one, . . . as a matter of public policy to prevent the unsettling of established lines." *Id.*

Here, Mr. Hill would like this Court to view a dispute concerning ownership of a well defined parcel of land in the same light as a dispute over an unsettled boundary line between two parcels of land. However, the cases discussing acquiescence concern boundary disputes. *See Calthorope I,* 441 A.2d 284 (Me. 1982). The Law Court has articulated that the purpose of the acquiescence doctrine is to recognize the status quo of boundary lines that landowners have collectively yielded to over time, albeit incorrectly. If the Court were to view this case as a boundary dispute, it would be providing Mr. Hill with an end run strategy around the more onerous doctrine of adverse possession, which clearly applies in this case.[3]

The entry will be as follows:

The Defendants' Motion for Summary Judgment is Denied with respect to Count I of the complaint, but Granted as to Counts II, III and IV.

Dated:        March 29, 2006

G. Arthur Brennan
Justice, Superior Court

Aaron K. Baltes, Esq. - PL
John C. Bannon, Esq.  - DEFS
John Shumadine, Esq.  - DEFS

---

[3]     Acquiring title by acquiescence, however, does not require continuous or exclusive possession, but merely possession sufficient to provide notice of the claim." *Maria Corporation,* 622 A.2d at 1185.

10