STATE OF MAINE
PENOBSCOT, SS.

DISTRICT COURT
BANGOR
Docket No. 02-RE-110

Susan Mitchell,
    Plaintiff

v.

Findings and Decision

FILED & ENTERED
SUPERIOR COURT
APR 1 8 2006
PENOBSCOT COUNTY

Donald Aucoin et al.,
    Defendants

      Hearing was held on the complaint and counterclaim. The parties were present with counsel. The plaintiff, Susan Mitchell, and the defendants, Donald Aucoin and Eleanor Aucoin, own abutting parcels of property in Orrington. This action centers on the location of a common boundary line that delineates the western side of Mitchell's property and the eastern side of the Aucoins' property; the parties each claim ownership to an area of land that lies between the boundary lines that they separately promote. Accordingly, Mitchell and the Aucoins seek a declaratory judgment establishing the location of that boundary line based on the record description when viewed in light of evidence extrinsic to the deeds. Additionally, the Aucoins claim that they have acquired title to the disputed area of land through adverse possession. For the reasons set out below, the court concludes that the Aucoins have established ownership by adverse possession. Both as a result of the rights the Aucoins have acquired in this way and because Mitchell's claim of record ownership is time barred, the court further concludes that proof of adverse possession gives the Aucoins title to the property. Finally, the court rejects the Aucoins' claim that Mitchell wrongfully removed a stonewall that marked the record boundary between their parcels.

      The parcels of property owned by the parties are located on the Swett's Pond Road. Mitchell's property lies generally easterly of the Aucoins' property. The parcels have a common source. Mitchell's property consists of a 1959 outconveyance from a larger parcel. The deed description of the parcel she now owns begins as follows:

1

"Beginning at an iron pipe driven into the ground in the Northwesterly line of the Town Road leading from South Orrington to Swett's Pond, which iron pipe is driven into the ground in the range of a stone wall and which is about six hundred thirty (630) feet Westerly of the West line of land formerly belonging to Edwin L. Bowden and now belonging to one Fickett; . . . ." *See* joint exhibit 6. The town road noted in this description is the Swett's Pond Road, and the Fickett property abuts Mitchell property on its east side (in other words, in an east-west orientation, Mitchell's property is located immediately in between the Fickett property and the Aucoins' property). The deed then goes on to purportedly describe a line that runs northerly from that beginning point; then an easterly line that is parallel to the Swett's Pond Road; then a line running southerly along the Fickett property; and then the final boundary line that runs along the Swett's Pond Road back to the point of beginning, thereby closing the description.

The Aucoins acquired their parcel in 1960 from the grantee of Mitchell's predecessors in interest. The deed to the Aucoins, however, did not include an affirmative description of the property they received in that transaction. Rather, the deed merely recited the description of the larger parcel that the grantors had owned and then excepted the property that the grantors had conveyed to Mitchell's predecessors in interest (her late husband's parents) the previous year.

The claims for declaratory judgment arise because the deed description is latently ambiguous: for three primary pertinent reasons, the first boundary as described in that instrument cannot be located on the face of the earth on the basis of the record description. First, no one has found the iron pipe in the area described by the deed as the starting point of the deed description. Second, there has never existed a stonewall in the location offered by the deed as the western boundary of Mitchell's property, that is, 630 feet from the southeast corner of her property (defined as the intersection of the Mitchell-Fickett boundary line and the northern edge of the Swett's Pond Road). Rather, a north-south line that would start 630 feet westerly of the southeast corner of the Mitchell property would bisect an open field. And third, there is considerable doubt whether there ever existed a stonewall that ran north-south *anywhere* other than on the westerly

2

boundary of Mitchell's property, which abuts the Fickett parcel.[1] On this point, Mitchell contends that there was never a stonewall in any location that might constitute her western line. From this, she contends that the western boundary of her property is a line that begins 630 feet from the southeast corner of her parcel. The Aucoins, on the other hand, argue that a stone wall formerly was located in an area described as "the birches," which is an linear area of trees that runs northerly from the Swett's Pond Road, and that the former location of this monument defines the parties' common boundary line, even though it was located 470 feet (rather than 630 feet, as the deed's distance call indicated) from the southeast corner of Mitchell's property. Predicating their argument on evidence that there was a wall along the present location of the birches and on the familiar notion that monuments (such as a stone wall) have priority over distances in determining the location of a parcel on the face of the earth, *see Hennessy v. Fairly,* 2002 ME 76, ¶ 21, 796 A.2d. 41, 48, the Aucoins' urge that as a matter of record title, they own the disputed area, which is bounded on the east by the birches.

For two interrelated reasons, Mitchell's claim for declaratory judgment fails. First, for the reasons noted below, the Aucoins have established that they have adversely possessed the disputed land, thus establishing their ownership of it irrespective of record title. *See Dombkowski v. Ferland,* 2006 ME 24, ¶¶ 7, 31, --- A.2d ---, ---, --- (proof of adverse possession defeats claim of ownership based on record title).

Second, because the Aucoins have proven that they have possessed the disputed land adversely for at least 20 years, Mitchell is time barred from arguing that she is entitled to retain ownership of that property pursuant to her deeded interest. Title 14 M.R.S.A. § 801 provides

> No person shall commence any real or mixed action for the recovery of lands, or make an entry thereon, unless within 20 years after the right to do so first accrued, or unless within 20 years after he or those under whom he claims were seized or possessed of the premises, except as provided in this subchapter.

The right to recover land accrues when the person claiming record title is disseized. 14 M.R.S.A. § 803(1). Further, the 20-year period of limitations runs during the time when

---

[1] Later in this opinion, the court addresses and denies the Aucoins' claim that Mitchell removed a wall that served to designate the location of a boundary, because the Aucoins have failed to prove in the first place that a stonewall existed in the area of the birches.

3

the record titleholder is the claimant's predecessor in interest. 14 M.R.S.A. § 802.[2] The essence of Mitchell's claim is that she should be entitled to recover the disputed land and make an entry onto that land because because she has record title to it, even if it has been used and functionally occupied by the Aucoins. As is discussed below, the Aucoins have proven that they have adversely possessed the disputed land since they acquired their property in 1960. The first owners of Mitchell's parcel as it currently exists, her late husband's parents, Leland and Ruth Mitchell, acquired the land in 1959. The Aucoins purchased their parcel in 1960, and they promptly began to use the disputed area. Leland and Ruth Mitchell therefore became claimants to the land at that time, and the 20-year period of limitations commenced then as well.

The Aucoins do not meaningfully contest another result of their argument based on the statute of limitations, namely, that if Mitchell is barred from pursuing a claim for record ownership in her count for declaratory judgment, then they (the Aucoins) are similarly barred. Although section 801 may be seen to apply differently to the Aucoins than to Mitchell because, until Mitchell posted a no trespassing sign during the course of this litigation, they have used the disputed property and thus are not seeking to "recover[]" it or "make an entry" onto it, they have not made that argument. And more importantly, their successful claim of adverse possession eliminates the need to address the merits of that part of their claim that rests on the record description of their parcel.

In order to establish ownership of property on the basis of a claim of adverse possession, the claimants must prove that their use of his land was, over a period of at least twenty years, actual, open, visible, notorious, hostile, under a claim of right, continuous and exclusive. *Striefel v. Charles-Keyt-Leaman Partnership*, 1999 ME 111, ¶ 6, 733 A.2d, 984, 989. Proof of these elements is by a preponderance of the evidence. *Id.*, ¶ 3, 733 A.2d at 988. Here, the Aucoins acquired the property they currently own in 1960. There is a residential structure on that property, located on the Johnson Mill Road. Across that road, there is a barn and a farm pond. This area abuts the field that is in

---

[2] None of the parties has pursued an argument based on the applicability of a 40-year period of limitations under section 815. The court does not consider that statute except to note that its invocation would not lead to a different result, because more than forty years passed between the accrual of a claim to recover the disputed area and the commencement of this action.

dispute. The prior owners, the Blakes, wanted the property maintained as a farm, and the Aucoins did so by raising cows, among other things. As part of the operation of the farm, they mowed the field that is in dispute, and they hayed it up to the top of the knoll, where the area of birch trees is located. Although Mitchell disputes this point, the court finds that, because they needed the hay for their animals, the Aucoins themselves hayed the field every year until the mid-1980's, when a third party assumed the annual mowing responsibilities for them. (The Aucoins had an arrangement with the third-party, Mike Allen, under which he took the hay in exchange for manure that the Aucoins used for their garden.) That arrangement continued until after the parties' dispute was placed into suit.[3] A 2001 photograph demonstrates that, that year, the field was cut up to the area of the birches. *See* defendants' exhibit 1. Because the Aucoins had operated their land as a farm from the time they acquired the property in 1960 and had animals from the beginning for which the hay was used, the court finds that the photograph represents the use to which they put the disputed land from that time.

The court also places significance in the dominion exercised by the Aucoins over the property when one of Mitchell's sons, Steven, drove an ATV over the disputed area to an extent that he created a path that would accommodate the vehicle through the field. In approximately 1982, Donald Aucoin asked him not to ride the ATV over the middle of the field but rather drive on the edge of the field. Steven Mitchell acceded to that request.

It is further worthy of note that in 1973, Mitchell's predecessor in interest had retained Andrew Shyka to perform surveying work on her property and in the field in dispute. Shyka's work revealed the problems underlying the boundary dispute at issue in this case. Mitchell's predecessors approached the Aucoins with a draft quitclaim deed, which was based on Shyka's work and under which the Aucoins would release any claim

---

[3] At a time when this case was pending, Donald Aucoin was mowing the field, and Mitchell confronted him and challenged his right to do so. According to Mitchell herself, Aucoin told her that he was mowing the field just as he had done before. Mitchell also reiterated his belief that he and his wife owned the disputed area and that any claim to the contrary was without merit. Mitchell later put up a "No Trespassing" sign in the field, and Aucoin has not mowed it since then. This conduct of both parties is of little consequence here. Aucoin's forbearance from mowing is best seen as a way to avoid a confrontation pending judicial resolution of the parties' dispute, and the erection of the sign came too late in the process to have any legal effect.

5

to the disputed area. The Aucoins declined to execute the deed. This was sufficient to reinforce an awareness of the Aucoins' claim to the property to the owners of the Mitchell property and was consistent with the Aucoins' use of the property since 1960. Even after the 1973 proposal, neither Mitchell's predecessor not she herself made any use of the disputed land, and they took no meaningful steps to assert their rights to the property until they filed this action in 2002.

These findings demonstrate that the Aucoins' occupancy of the disputed area was actual: they controlled the land in fact, and they did so in a way that has been consistent with the nature and potential use of the property. *See Striefel*, 1999 ME 111, ¶ 9, 733 A.2d at 989. This is revealed in their ongoing use of the property to cut hay and in the dominion they exercised over the property when they directed Steven Mitchell where he did – and did not – have permission to operate an ATV in the disputed area. Although the evidence tends to indicate that Mitchell and the prior owners of her property paid the taxes on the land, the overt and actual use of the property by the Aucoins – and the absence of any comparable conduct by Mitchell or her predecessors in interest – result in the conclusion that the Aucoins have actually possessed the property in a way that is sufficient to establish this element of their claim for adverse possession. The nature and extent of the Aucoins' use of the land, in other words, in more probative than the question of who paid the taxes on the property.

The Aucoins used the property in an open, visible and notorious way. They did not attempt to conceal their use of the property, and their use was sufficient to provide any other person with notice that a claim of ownership based on any record title was in jeopardy. *See Striefel*, 1999 ME 111, ¶ 11, 733 A.2d at 991. Additionally, the Aucoins' use of the property was hostile because the Aucoins did not seek or obtain permission of any other person to use and occupy the land. *See id.*, ¶ 13, 733 A.2d at 991. Indeed, by 1973, they used the disputed section of the field in direct contravention to the efforts that Mitchell's late husband exerted to try to secure title to it. Nonethess, even prior to 1973, the Aucoins' used the property through their unilateral action. In 1991, the Aucoins' son-in-law used a portion of the disputed land when he was cutting wood from a nearby area. Mitchell's late husband, Herbert Mitchell, who then jointly owned the property with Mitchell, approached him to give him permission to use that area. By that time, however,

6

the Aucoins had used the property adversely for more than 40 years, and so any legal significance arising from any such permission is lost due to the prior passage of time.[4]

The Aucoins used and occupied the property under a claim of right, that is, without a recognition of or subordination to the rights of others. *See Striefel*, 1999 ME 111, ¶ 14, 733 A.2d at 991-92. At all times since they acquired their property in 1960, the Aucoins have believed that they own the disputed area, and they have maintained that view even in the face of Mitchell's challenge conveyed to them in 1973 when Shyka proposed a boundary line and later after this action had been commenced. *See* note 3 *supra*. This satisfies the common law element of a "claim of right." And the statutory formulation of an adverse possession claim under 14 M.R.S.A. § 810-A does not require proof of a claim of right, *see Dombkowski*, 2006 ME 24, ¶¶ 24, --- A.2d at ---,[5] and thus even if the Aucoins had expressed a willingness to defer to the claim of another (something that in fact they had not done), their claim for adverse possession would not be affected.

Next, because of the factual circumstances noted above, the Aucoins' use of the property has been continuous for at least twenty years, and it has been exclusive.

Mitchell argues that because the Aucoins did not assert their adverse possession claim within 20 years of the date when their claim arose, they are barred from pursuing it here. This contention, however, is not supported by the statutory provision on which she relies. Title 14 M.R.S.A. § 801, which creates a twenty-year period of limitations, establishes the time in which a party may file an action to *defeat* (not assert) a claim of adverse possession. After the twenty-year period of limitations has run, then, if the other elements of an adverse possession claim are established, someone in Mitchell's position

---

[4] The quality of the evidence regarding the communications between Herbert Mitchell and the Aucoins' son-in-law is marginal because the only evidence of that exchange is the plaintiff's own testimony, and the basis for her knowledge is not clear in the trial record. Because any such encounter occurred more than forty years after the Aucoins began to occupy the property at issue here, however, even if the record established that Herbert Mitchell offered such permission, it is not material.

[5] A claim for adverse possession may be grounded on common law or statute. *Colquhoun v. Webber*, 684 A.2d 405, 410 (Me. 1996) Despite the two sources of such a claim, it remains a single cause of action. *Dombkowski*, 2006 ME 24, ¶ 19, --- A.2d at ---

is barred from challenging that adverse possession claim successfully. In other words, rather than creating a period of limitations for the adverse possession claimant, section 801 creates a period of limitations for that claimant's opponent because it defines the period of time in which a claim for adverse possession ripens. *See Johnson v. Town of Dedham*, 490 A.2d 1187, 1189 (Me. 1985) ("Section 801 is a twenty-year statute drafted in terms of an absolute statute of limitations which we have interpreted to be subject to the general elements of adverse possession."), *citing Inhabitants of School-District No. 4 v. Benson*, 31 Me. 381, 384 (construing statutory period of limitations to provide, "If the plaintiffs have held the premises by a continued disseizin for twenty years, the right of entry by the defendants is taken away, and any action by them to recover the same, is barred by limitation."). Thus, the commencement for a claim based on adverse possession is not subject to the twenty-year period of limitations provided in section 801. *See Maine Gravel Services, Inc. v. Haining*, 1998 ME 18, ¶ 7, 704 A.2d 417, 419 (upholding judgment based on adverse possession of property for more than fifty years).

For these reasons, the court concludes that the Aucoins have established that they have acquired title to the disputed area of the field through adverse possession.

Through their amended counterclaim, the Aucoins seek recovery from Mitchell based on their contention that she, or others who would subject her to liability, unlawfully removed or disturbed the rock wall that they argue constituted the monument marking the boundary of their record ownership interest to their property. *See* 14 M.R.S.A. § 7552(2)(C). The Aucoins argue that a stonewall existed in the area where the birches are located and that Mitchell arranged for a contractor or others to dismantle and remove the wall. The evidence is insufficient for the court to conclude that a wall had been located in the area of the birches. Although the Aucoins presented evidence in support of their contention, the weight of evidence suggests that there was not a wall in that location. A number of local residents, whose ties to the plaintiffs are not of a magnitude to call their testimony into question, are quite familiar with the area and observed affirmatively that there was no rock wall among the birches. Further, Andrew Shyka, the professional surveyor who examined the area in 1973, found no evidence of a rock wall. The evidence does reveal that there were loose rocks in that wooded area and in the field. That evidence, however, suggests merely that the soil contained some rocks – not an

8

uncommon phenomenon in this part of the world – that several people simply moved out of the way. That evidence does not rise to the level of suggesting that the removal of those several rocks proves that a wall had existed there.

The entry shall be:

For the foregoing reasons, judgment on the complaint is entered for the defendants.

On count 2 of the counterclaim, judgment is entered for the counterclaim plaintiffs (the defendants). The court concludes that, through adverse possession, Donald Aucoin and Eleanor Aucoin have acquired title to the westerly side of the area defined by a stand of birch trees. The counterclaim plaintiffs shall submit a proposed judgment on count 2, conforming to statutory requirements governing the form of such a judgment. When the proposed judgment is filed, counsel for the counterclaim plaintiffs shall advise the clerk whether opposing counsel agrees with the form of the proposed judgment.

On counts 1 and 3 of the counterclaim, judgment is entered for the counterclaim defendants (the plaintiff).

The defendants are awarded their costs of court.

The judgments ordered herein shall not become final until the court issues the judgment to be submitted by the defendants.

Dated: April 13, 2006

_____
Justice, Maine Superior Court
sitting in Maine District Court

9

SUSAN MITCHELL VS DONALD E AUCOIN & ELEANOR M AUCOIN
UTN:AOCSsr  -2002-0092306                      CASE #:BANDC-RE-2002-00110
--------------------------------------------------------------------------------
SUSAN MITCHELL                                            PL
ATTY OTIS, JAY  Tel# (207) 989-6600
ATTY ADDR:PO BOX 907 146 PARKWAY SOUTH SUITE 10 BREWER ME 04412-0907

DONALD  E. AUCOIN                                         DEF
ATTY RUSSELL, EDWARD C.   Tel# (207) 942-8244
ATTY ADDR:145 EXCHANGE STREET, SUITE 3 BANGOR ME 04401-6505

ELEANOR  M. AUCOIN                                        DEF
ATTY RUSSELL, EDWARD C.   Tel# (207) 942-8244
ATTY ADDR:145 EXCHANGE STREET, SUITE 3 BANGOR ME 04401-6505


M=More, Space = Exit:M

Select the EXIT KEY for page selection line.