STATE OF MAINE                          SUPERIOR        COURT
CUMBERLAND, ss                          CIVIL ACTION
                                        DOCKET NO. RE-15-105


NATHANIEL WARREN-WHITE, et al.,

                Plaintiffs              STATE OF MAINE
                                        Cumberland, ss. Clerk's Office  ORDER
v.
                                        MAR 2 6 2019

MARTINA SULLIVAN,                       RECEIVED

                Defendant


The prior history of this case is that after a two day trial in February 2017 the court

(Walker, J.) found that plaintiffs Nathanial and Elizabeth Warren-White had established ownership

by adverse possession to a disputed area (generally referred to as the Abandoned Road area) that

was also claimed by defendant Martina Sullivan. The court also awarded the Warren-Whites

$2,000 against Sullivan on their claim of trespass. See Findings and Decision dated August 17,

2017 and filed August 18, 2017. Judgment was entered on September 8, 2017.

Sullivan appealed from that judgment, which was affirmed by the Law Court on May 3,

2018. Decision No. Mem. 18-38, Docket No. Cum-17-420.

On August 13, 2018 Sullivan, now representing herself,[1] filed a motion pursuant to

M.R.Civ.P. 60(b)(3) and 60(b)(6) for relief from the judgment. She filed an amended motion on

August 15, 2018. In the meantime, however, she had filed an appeal from an order entered on

plaintiffs' post-trial bill of costs. Pursuant to M.R.App.P. 3(c)(2) the Superior Court did not have

---

[1] Sullivan had been previously represented by counsel.

**Plaintiffs–Michael Vaillancourt, Esq.**
**Defendant–Pro Se Defendant**

authority to act on Sullivan's Rule 60(b) motion while the appeal was pending, and the file was in the Law Court.

On March 22, 2019 this court received the file in the above-captioned case back from the Law Court after the mandate issued affirming Justice Walker's order on the post-trial bill of costs. The court has now reviewed the papers filed on Sullivan's Rule 60(b) motion.

Rule 60(b)(3) allows the court to set aside a prior judgment upon a showing of fraud, misrepresentation, or other misconduct of an adverse party.[2] The party seeking relief from judgment pursuant to Rule 60(b) bears the burden of proving that the judgment should be set aside. *Keybank N.A. v. Sargent,* 2000 ME 153 ¶ 13, 758 A.2d 528.

In this case Sullivan has provided a list of alleged instances that she apparently contends constitute fraud, misrepresentation, or misconduct by the Warren-Whites. However, she has not provided any affidavits or made any factual showing to justify relief under Rule 60(b)(3).

Specifically, Sullivan argues that the Warren-Whites and their surveyor and attorneys "misrepresented" the location of the boundary line that was in dispute at the trial in February 2017. This is simply an attempt to relitigate the issues that were decided at the trial. Sullivan has offered no evidence of any misrepresentation that would justify an evidentiary hearing. *See In re David H.,* 2009 ME 131 ¶ 34, 985 A.2d 490. Instead she has merely rephrased the argument that the Warren-Whites should not have prevailed at trial as a contention that they and their surveyor and attorneys "misrepresented" the boundary line.

---

[2] While Sullivan's motion also refers to Rule 60(b)(6), the Law Court has stated that relief under Rule 60(b)(6) is an extraordinary remedy that may be granted only when the more particularized circumstances set out in the other subsections of Rule 60(b) do not apply. *Ezell v. Lawless,* 2008 ME 139 ¶ 28, 955 A.2d 202. As a result, if Sullivan is not entitled to relief under Rule 60(b)(3), the court cannot consider the same alleged fraud or misconduct to determine whether relief is available under Rule 60(b)(6).

Sullivan cites certain meetings and communications that are listed in an attorney's fee affidavit submitted by an attorney for the Warren-Whites. However, she has offered no evidence to support her bare assertion that those meetings and communications somehow constituted collusion or misconduct. While she also suggests that there are certain inconsistencies with the testimony offered by the Warren-Whites and their witnesses at trial, those inconsistencies are trivial at best.

Finally, she argues – without any specifics – that her insurance company somehow limited her defense and that she and her surveyor were not given an opportunity by her attorneys to review the boundary line set forth in the September 8, 2017 judgment. If so, those are issues between Sullivan and her insurer and former attorneys. They are not a basis for relief from the judgment under Rule 60(b).

Sullivan has commenced a second action (RE-18-228) contending that the boundary line established by the September 8, 2017 judgment has not been correctly marked on the face of the earth, and that action remains pending.

The entry shall be:

Defendant's Rule 60(b) motion for relief from the judgment entered on September 8, 2017 is denied. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March 25, 2019

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 03/26/19
mc

3

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-15-105

NATHANIEL WARREN-WHITE and )
ELIZABETH WARREN-WHITE, )
)
Plaintiffs )
)
v. )
)
MARTINA SULLIVAN, )
)
Defendant. )

ORDER ON PLAINTIFFS' BILL OF
COSTS

STATE OF MAINE
Cumberland ss Clerk's Office

JUN 13 2018 2:17PM

RECEIVED MCV

Before the Court is Plaintiffs' bill of costs to which Defendant has filed a request for review. The Court has considered the parties' filings and will tax costs as outlined below.

Hearing no objection from Defendant, the Court allows the following costs:

| 06/12/15 | Complaint filing fee | $150.00 |
|---|---|---|
| 06/15/15 | Sheriff service costs | $81.74 |
| 01/06/17 | Witness fee – E. Curtis | $17.26 |
| 01/06/17 | Witness fee – S. Flynn | $18.80 |
| 01/17/17 | Service of witness subpoena | $44.71 |
| 01/19/17 | Witness fee – J. Barker | $15.28 |
| 01/19/17 | Witness fee – L. Montgomery | $24.78 |
| 02/06/17 | Attorney parking – Day 1 of Trial | $18.00 |
| 02/07/17 | Attorney parking – Day 2 of Trial | $15.00 |
| 02/22/16 | Large format poster boards for trial | $6.56 |
| 03/03/16 | Deposition transcript – M. Sullivan | $451.45 |
| 04/21/16 | Deposition transcripts – Warren-Whites | $513.45 |
| 05/16/16 | Deposition transcript – R. Parker | $131.45 |
| 06/23/16 | Deposition transcript – M. Ek | $326.10 |
| 02/03/17 | Outside copying – trial exhibits | $40.16 |
| 02/10/17 | Trial transcript (audio) | $25.00 |

Pursuant to 14 M.R.S.A. § 1502-B, Plaintiffs have requested recovery of the following costs, to which Defendant objects:

| 01/12/17 | Out of state service – S. Flynn subpoena | $20.00 |
|---|---|---|
| 01/17/17 | Service of witness subpoenas – Payzants | $70.79 |

Plaintiffs–Michael Vaillancourt, Esq.
Defendant–Andrew Sparks, Esq. and
Bruce McLaughlin, Esq.

| 02/14/17 | Travel reimbursement – Witness S. Flynn | $330.00 |
| 03/20/17 | Travel reimbursement – Witness R. Parker | $1,652.27 |

Defendant objects to the cost of out-of-state service of witness Flynn because attendance cannot be compelled by subpoena served on an out-of-state witness, and therefore the cost "could not achieve anything." (Def.'s Br. 3.) On March 15, 2017, Plaintiff's attorney filed his billing records with this Court, which include a January 12, 2017 charge for "Sheriff costs Out of State – Grayson County," where witness Flynn resides. Regardless of whether the subpoena served on witness Flynn would have been enforceable by this Court, it served the intended purpose of compelling the witness's attendance at trial. The Court will not deny Plaintiff this cost on the theory that the subpoena may not have been enforceable. This cost is allowed.

Defendant objects to the service of subpoenas on witness Payzants because the witness did not testify at or attend the trial. Absent information that the witness's potential testimony was irrelevant or otherwise inadmissible, the Court finds that fees for service of subpoenas are recoverable even though a party later determines that the testimony of the witness is not required at trial. *Camp Takajo, Inc. v. SimplexGrinnell LP*, No. CV-04-773, 2007 Me. Super. LEXIS 173, at *6 (Aug. 21, 2007). This cost is allowed.

Defendant objects to the travel reimbursement for witness S. Flynn, arguing that the witness's travel costs are not recoverable pursuant to 14 M.R.S.A. § 1502-B, which authorizes reimbursement of attendance fees and travel costs as set out in 16 M.R.S.A. § 251. The Court agrees with Defendant that section 251 does not authorize this cost. This cost is disallowed.

Defendant objects to the travel reimbursement for witness R. Parker for a number of reasons. Defendant first argues that 14 M.R.S.A. § 1502-B and 16 M.R.S.A. § 251 do not contemplate reimbursement for general travel expenses. In accordance with 16 M.R.S.A. § 251, Plaintiff filed an affidavit stating the name, residence, number of days in attendance and the

actual amount paid to Mr. Parker. The affidavit further states that Mr. Parker previously resided in Maine but moved to Arizona a couple of weeks before trial. The affidavit states that the fee paid to Mr. Parker includes professional fees, air fare, car rental, and hotel accommodations, but does not itemize these expenses. Defendant argues costs of lodging, car rental, and air fare are not recoverable pursuant to any rule or statute.[1] The Court agrees that these travel expenses are not allowed. *Brunswick Topsham Water Dist. v. Layne Christensen Co.*, CUMSC-CV-2007-333 (Me. Super. Ct., Cum. Cty., May 7, 2009). Defendant also argues that 14 M.R.S.A. § 1502-B does not authorize expert witness fees and expenses.[2] However, 16 M.R.S.A. § 251 allows a "reasonable sum for each day's attendance of any expert witness." Defendant is allowed some amount for Mr. Parker's attendance at the trial. *See Poland v. Webb*, 1998 ME 104, ¶ 15, 711 A.2d 1278 (expert's cost for attendance at trial was allowed, while costs for preparation for trial and travel time were not allowed); *Cole v. A.J. Cole & Sons, Inc.*, 567 A.2d 1342, 1344 (Me. 1989) (same). At this time, Plaintiffs' affidavit does not contain sufficient information to determine which costs incurred by Mr. Parker are allowable and which are not. If Plaintiffs continue to seek costs relating to Mr. Parker, Plaintiffs are directed to file within 10 days an affidavit setting forth the hourly rate sought for Mr. Parker and the number of hours of his in-court testimony. *See McNally v. DiDonato*, CV-99-231, 2001 Me. Super. LEXIS 3, at *1 (Jan. 4, 2001).

Pursuant to 14 M.R.S.A. § 1502-C, Plaintiffs have requested recovery of the following costs, to which Defendant objects:

---

[1] Defendant further argues that it should not have to bear the expense of Mr. Parker's decision to move across the country weeks before trial and Plaintiffs' decision not to take a trial deposition of Mr. Parker. Although it is sufficient to find that travel expenses are not allowed under the applicable statutes, the Court likewise finds this argument compelling.

[2] Defendant is technically correct that expert witness fees and expenses are not expressly authorized by 14 M.R.S.A. § 1502-B; rather, they are authorized by 14 M.R.S.A. § 1502-C. However, both sections refer to 16 M.R.S.A. § 251.

| | | |
|---|---|---|
| 10/24/14 | Royal River Surveyor R. Parker | $995.00 |
| 04/19/15 | Atlantic Coast Title: Title work/search | $860.00 |
| 07/21/15 | Attorney mileage to/from site walk | $19.55 |
| 08/25/15 | Attorney mileage to/from client meeting | $18.40 |
| 12/11/15 | Mediation costs – Jerrol Crouter | $1,633.00 |
| 02/24/16 | Parking | $15.00 |
| 09/27/16 | Attorney parking – Judicial Settlement Conference | $16.00 |
| 02/02/17 | Attorney mileage to/from meeting with opposing counsel | $2.68 |
| 02/02/17 | Attorney parking – meeting with opposing counsel | $9.00 |
| 02/05/17 | Attorney mileage to/from site walk | $14.98 |

Defendant argues the $995.00 cost for surveying and the $860.00 cost for title work are not recoverable pursuant to any rule or statute. The Court agrees. While 14 M.R.S.A. § 1502-C permits recovery for expert witness fees and expenses, this provision is limited to those allowed by 16 M.R.S.A. § 251. In turn, 16 M.R.S.A. § 251 only permits "a reasonable sum for each day's *attendance* of any expert witness…." The requested costs are unrelated to attendance at trial. *See Poland*, 1998 ME 104, ¶ 14, 711 A.2d 1278 (costs incurred in expert's preparation for trial are not allowed). These costs are disallowed.

Defendant likewise objects to the costs of attorney parking and mileage, as well as the unclassified "parking" cost, as not recoverable under any rule or statute. The Court again agrees. These costs are not recoverable under any provision in 14 M.R.S.A. § 1502-C and would, at best, be recoverable under 14 M.R.S.A. § 1502-B(4). However, that provision is only for travel expenses "to the place of trial," and none of the costs requested by Plaintiff were incurred while travelling to the place of trial. These costs are disallowed.

Defendant objects to the cost of mediation on the ground that, *inter alia*, mediation costs are not recoverable by the prevailing party under any rule or statute. The Court also agrees with

this contention. *See Thurston*, 1994 Me. Super. LEXIS 37, at *4 (voluntary mediation fees are not taxable as costs). This cost is disallowed.

The Court hereby taxes costs in the amount of $1,970.53. If Plaintiffs continue to seek costs relating to Mr. Parker, Plaintiffs are directed to file within 10 days an affidavit setting forth the hourly rate sought for Mr. Parker and the number of hours of his in-court testimony.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 6/13/18

Lance E. Walker, Justice
Maine Superior Court

Entered on the Docket: 6/13/18

STATE OF MAINE                                  SUPERIOR COURT
CUMBERLAND, ss                                  Docket No.: CV-RE-15-105

                                        )       **Plaintiffs-Michael Vaillancourt, Esq.**
NATHANIEL WARREN-WHITE, et al.,         )       **Defendant-Andrew Sparks, Esq. and**
                                        )       **Bruce McGlauflin, Esq.**
        Plaintiffs/Counterclaim Defendants, )
                                        )
        v.                              )       FINDINGS AND DECISION
                                        )
MARTINA SULLIVAN,                       )       STATE OF MAINE
                                        )       Cumberland ss Clerk's Office
        Defendants/Counterclaim Plaintiff )     AUG 18 2017  3:32PM
                                        )       RECEIVED

Hearing was held over the course of two days on the complaint and counterclaim.

The parties were present with counsel. Counsel completed post-trial briefing by April 1,

2017.

I.      **FACTS**

The plaintiffs, Nathaniel and Elizabeth Warren-White, and the defendant, Martina

Sullivan, own abutting parcels of property in Freeport. This action centers on the location

of a common boundary line that delineates the southern side of the Warren-White's

property and the northern side of Sullivan's property; the parties each claim ownership to

an area of land that lies between the boundary lines that they separately promote, referred

to as the "abandoned road". The parties agree that under Maine law, each party owns to

the centerline of the abandoned road, unless Plaintiff can establish title acquired to some

part or the entire southerly portion of that land through adverse possession[1].

Accordingly, the parties seek a declaratory judgment establishing the location of that

---

[1] Plaintiff also claims Title by Acquiescence, which the court does not reach in light of its
conclusion regarding Plaintiffs' claim of adverse possession.

boundary line. Additionally, the Warren-Whites claim that they have acquired title to the disputed area of land through adverse possession. For the reasons set out below, the court concludes that the Warren-Whites have established ownership by adverse possession. As a result of the rights the Warren-Whites have acquired in this way, the court further concludes that proof of adverse possession gives the Warren-Whites title to the property.

Sullivan acquired title to property known as 104 South Freeport Road, in Freeport, Maine on or about June 5, 1998. The Warren-Whites acquired title to three parcels of real property known as 17 Church Road in Freeport, Maine on or about October 21, 2005. Prior to purchasing their property, the Plaintiffs observed that the boundary line shared with the Sullivan property extended along a line between two large maple trees, and along an old stockade fence that ran a partial distance on the same line between the two trees. That line is also notable by reference to wire and wooden fence remnants and lilac bushes. This was well supported by the weight of the most credible testimony of Plaintiffs, Barker, and Flynn. This line is consistent with the southerly boundary line of the "Abandoned Road" as depicted on the Parker survey or what the parties have referred to as the "Shared Boundary Line". In October 2005, lawn, flower gardens, landscaping trees, apple trees and other plantings, beds, a brush pile and the stockade fence were sited along the Warren-White side of the Shared Boundary Line. The driveway accessing the Plaintiffs' property, which was built in the late 1970s, ran along their side of the Shared Boundary Line, all of which formed the basis for the Plaintiffs to reasonably believe that was, in fact, their boundary line.

2

By contrast, Ms. Sullivan had not formed any belief to the contrary. In fact, the evidence at trial conclusively demonstrated that she and her immediate predecessor in interest also believed that her northerly property line was the Shared Boundary Line.

## II.    ANALYSIS

### A.    Adverse Possession

In order to establish ownership of property on the basis of a claim of adverse possession, the claimants must prove that their use of her land was, over a period of at least twenty years, actual, open, visible, notorious, hostile, under a claim of right, continuous and exclusive. *Striefel v. Charles-Keyt-Leaman Partnership*, 1999 ME 111, P6, 733 A.2d, 984, 989. Proof of these elements is by a preponderance of the evidence. *Id.*, P3, 733 A.2d at 988.

The prior owner of the Warren-White property, Inga-Lil Kunkle built the residence and the driveway in 1977 and 1978. The lawn was installed on the property soon after the home was constructed. Kunkle and her agents openly used and maintained the property up to the Shared Boundary Line from the late 1970s until 2005 by mowing and raking the lawn, trimming and maintaining the trees and other plantings, maintaining a brush pile, using the driveway to access the property and plowing the driveway. Sullivan's predecessor in title, Sharon and Jeff Flynn gardened up to, but did not exercise any dominion beyond the old stockade fence and other fence remnants situated along the Shared Boundary Line. Flynn would occasionally seek permission from Kunkle to use the southerly side of the stockade fence for gardening. Sullivan did not use or maintain any of the property within the Abandoned Road with the exception of the small section of property to the south of the easterly end of the old stockade fence.

3

Through the entirety of Plaintiffs' ownership of their property until the present dispute arose in 2015, Plaintiffs' contractors and tenants all used and maintained the property up to the Shared Boundary Line. The overwhelming credible testimony supporting this conclusion was supplied by Plaintiffs, Curtis, Montgomery and Joyce. Although Plaintiffs spent several years sailing around the world, they spend considerable time back at their Freeport residence during each of those years. Moreover, the evidence supports that the historical dominion and control of the disputed property continued to be exercised during that time. The fortuity that recent photographs depict overgrowth in the abandoned road area is of no moment to the analysis. The evidence demonstrates that Plaintiffs stopped tending to the disputed area when tensions arose between them and Sullivan. Moreover, Sullivan's own testimony offered to counter the overwhelming testimony supporting a finding of adverse possession was not convincing, to say the very least of what might be said of it. She argues that Plaintiffs never actually used any portion of the abandoned road, which is a claim that is substantially undermined by her testimony that she could not see over the growth to make any such observations. The Plaintiffs' driveway is in the abandoned road area, which Sullivan surely must have observed in use by Plaintiffs.

These findings demonstrate that the Warren-Whites (and their predecessors) occupancy of the disputed area was actual: they controlled the land in fact, and they did so in a way that has been consistent with the nature and potential use of the property. *See Striefel*, 1999 ME 111, P9, 733 A.2d at 989. This is revealed in their ongoing use of the property and their dominion over the property. The overt and actual use of the property by the Plaintiffs -- and the complete absence of any comparable

4

conduct by Defendant or her predecessors in interest -- result in the conclusion that the Warren-Whites have actually possessed the property in a way that is sufficient to establish this element of their claim for adverse possession.

The Warren-Whites, and predecessors in interest, used the property in an open, visible and notorious way. They did not attempt to conceal their use of the property, and their use was sufficient to provide any other person with notice that a claim of ownership based on any record title was in jeopardy. *See Striefel*, 1999 ME 111, P11, 733 A.2d at 991. Additionally, the Plaintiffs' use of the property was hostile because they did not seek or obtain permission of any other person to use and occupy the land. *See id.*, P13, 733 A.2d at 991. The testimony that Mrs. White sought permission from Sullivan to trim some vines in 2011 does nothing to undermine the court's conclusion. Plaintiffs explained that they discussed some vines that their contractors had cut due to the fact that they had grown over the Shared Boundary Line onto Plaintiffs' property. Plaintiffs recalled that the contractors may have mistakenly cut vines that were across the Shared Boundary Line on the Sullivan property but in any case never asked permission to to trim vines that originated on the Sullivan property but that were encroaching on the Warren-White property. The foregoing findings regarding the dominion of the disputed property by Plaintiffs' predecessors in interest support this conclusion for the relevant time period. Sullivan also argues that the type of use put to the disputed property by Plaintiffs is not sufficient to put the title owner on notice of adversity. The cases to which Sullivan cite are inapposite. Moreover, it is the sum total of all of the uses described herein that clearly provided notice to Sullivan. Moreover, the contention that the disputed property was a tangle of vines an weeds is as overwrought as it is inconsistent with the evidence

5

the court found to be most credible; to wit, the testimony of Plaintiffs, Ms. Barker, and Ms. Flynn, among others. All testified convincingly that while the southerly portion of the Shared Boundary Line, the Sullivan propery, was a tangle of vegetation, the property to the north of that line was completely and continuously maintained to include gardens, ornamental trees, shrubs, ground cover, lilac hedges, lawn, brush pile. To the extent there is any overgrowth in the abandoned road area, the court finds based on the credible testimony that this was the result of the Plaintiffs laudably having stopped maintaining the property in the disputed area after Sullivan started to erect flagging tape, stakes, landscaping trees, and saw horses on their driveway and down the southerly portion of their property. The court finds that based comfortably on the weight of the credible testimony, the constellation of all of the regularly maintained and manicured property and similar uses delineated the property adversely possessed, sufficient to have put the true title holder on notice.

The Plaintiffs and their predecessors in interest used and occupied the property under a claim of right, that is, without a recognition of or subordination to the rights of others. *See Striefel, 1999 ME 111, P14, 733 A.2d at 991-92.* At all times since they acquired their property the Plaintiffs have believed that they own the disputed area, and they have maintained that view. Significantly to the court, so too has Ms. Sullivan and her predecessors in interest. This satisfies the common law element of a "claim of right." And the statutory formulation of an adverse possession claim under 14 M.R.S.A. § 810-A does not require proof of a claim of right, *see Dombkowski,* 2006 ME 24, PP24.

Next, because of the factual circumstances noted above, the Warren-White's use of the property has been continuous for at least twenty years, and it has been exclusive.

6

### B.    Nuisance, Trespass, Punitive Damages

Although Ms. Sullivan's conduct over the disputed land has been course and loutish, the Plaintiffs have not me their burden in establishing that such conduct satisfies the claim of nuisance.  This is particularly true, especially under the circumstances, as it relates to the element of the tort which requires the interference that resulted and the physical harm, if any, from that interference to be substantial.  The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct.  The evidence simply fails to support such a conclusion.  Judgment on count 6 in favor of defendant.

Plaintiffs did not plead statutory trespass, and no evidence to support the elements of such a claim was presented even if the court liberally applied the notice pleading standard along with evidence offered that the parties conducted discovery in a fashion which contemplated such a claim.  However, Plaintiffs have established by a preponderance that Sullivan is liable for common law trespass, she having clearly intended to be on the land without consent.  In fact, Sullivan entered the Plaintiffs' property and placed wooden stakes in the lawn; removed a large fallen apple tree limb by dragging it across the Plaintiffs' lawn and walking through their lily garden; erected a barrier of plastic cones, potted plants and flagging tape across Plaintiffs' driveway.  Sullivan also entered the Plaintiffs' property to reset the position of shrubs and plants; plant three arbor vitae trees; place sawhorses on Plaintiffs' driveway; plant fiberglass poles; hang "no trespassing" signs at Plaintiffs' driveway entrance; adorn Plaintiff's driveway with blue flagging tape thereby restricting Plaintiffs' access to a substantial

7

portion of their property. Judgment on Count 7 in favor of plaintiffs and damages in the amount of $2,000.00.

Punitive damages are reserved for conduct either actually motivated by ill will or which is so outrageous that malice is implied. The burden is by clear and convincing evidence. Sullivan's conduct was ill-advised but was not, by clear and convincing evidence, motivated by actual malice and such conduct while boorish, is not sufficiently so to rise to implied malice.

**The entry shall be:**

On counts 1, 3, 4, and 7 of the complaint, judgment is entered for the plaintiffs. The court concludes that, through adverse possession, Nathaniel Warren-White and Elizabeth Warren-White have acquired title up to the southerly side of the abandoned road, described as the Shared Boundary Line. The plaintiffs shall submit a proposed judgment, conforming to statutory requirements governing the form of such a judgment. When the proposed judgment is filed, counsel for the defendant shall advise the clerk whether opposing counsel agrees with the form of the proposed judgment. Damages of $2,000.00 as to count 7.

On counts 6, 8, and 9 of the complaint, judgment is entered for defendant.

Count 2 of the complaint, judgment is entered for the defendant. Count 5 of the complaint is dismissed as moot.[2]

On counts 1-3 of the counterclaim, judgment for the counterclaim defendants (the plaintiffs).

---

[2] As to count 2 preliminary and permanent injunction, Plaintiffs failed to demonstrate that Plaintiffs' conduct caused irreparable injury. The court does not reach count 5, easement by prescription in light judgment on the adverse possession claim.

8

The plaintiffs are awarded their costs of court.

The judgments ordered herein shall not become final until the court issues the judgment to be submitted by the plaintiffs.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: August 17, 2017

Lance E. Walker, Justice
Maine Superior Court

9